**UNITED STATES of America,
Appellant,**

v.

**Raymond P. ALLARD,
Defendant, Appellee.**

**No. 88–1408.**

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1988.

Decided Jan. 5, 1989.

Richard G. Stearns, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for appellant.

Alan R. Hoffman, with whom, Lynch, Brewer, Hoffman & Sands, Boston, Mass., was on brief, for appellee.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

On December 16, 1985, a federal grand jury indicted the defendant-appellant, Raymond P. Allard, for using the mails in furtherance of a scheme to fraudulently obtain a license to practice medicine in the Commonwealth of Massachusetts. Just before his trial was to begin, on May 27, 1986, Allard waived the superseding indictment and pled guilty to one count of a felony Information charging him with mail fraud in violation of 18 U.S.C. § 1341.[1] On

---

* Of the District of Massachusetts, sitting by designation.

**1.** Section 1341 provides that
  Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of

false or fraudulent pretenses ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined

July 3, 1986, Judge Zobel of the United States District Court of Massachusetts suspended imposition of sentence and placed Allard on probation for two years, on the condition that he perform 500 hours of community service.

This might have been the end of the Allard story but for a diligent attorney and an important United States Supreme Court decision. On June 24, 1987, the Supreme Court handed down *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In *McNally*, the Supreme Court ruled that the federal mail fraud statute, 18 U.S.C. § 1341, under which Allard had been convicted, "clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." 107 S.Ct. at 2879. Explaining that "the mail fraud statute ... had its origin in the desire to protect individual property rights, and any benefit which the Government derives from the statute must be limited to the Government's interests as propertyholder," the Court rejected the use of the intangible rights doctrine to secure convictions under the statute. 107 S.Ct. at 2881 n. 8. Arguing that Allard had, therefore, been convicted unconstitutionally under section 1341, Allard's attorney promptly filed a motion to vacate the conviction or set aside the sentence pursuant to 28 U.S.C. § 2255, the federal *habeas corpus* statute. After a hearing, Judge Zobel considered the effect of *McNally* on Allard's conviction and on February 26, 1988 issued a memorandum of decision and judgment dismissing the Information. Allard had served all but approximately four months of his two-year probation.[2] Because we do not believe that *McNally* requires the dismissal of the Information at issue in this case, we reverse.

The resolution of this appeal turns on the reading and interpretation of the government's Information. Although both parties briefed and argued the impact of *McNally* on Allard's conviction, this argument, as well as the District Court's ruling, misses the mark. *McNally* has not displaced this circuit's well-settled principles governing the construction and interpretation of a criminal indictment or information. In order to determine how *McNally* muddied the waters below, we turn to the particulars of the Information at the heart of this appeal.

### I. The Information

The eight-page Information to which Allard pled guilty charged that:

Beginning in March, 1981, and continuing thereafter at least to April, 1984, in the District of Massachusetts, and elsewhere, RAYMOND P. ALLARD[,] the defendant, devised and intended to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, its citizens, and others. The purpose of the scheme was for [the defendant] to obtain fraudulently a license to practice medicine. The method of the scheme was for [the defendant] knowingly to make false pretenses, representations, and promises to ... the Commonwealth ..., Worcester City Hospital, and others. The result of the scheme was that [the defendant] did in fact improperly practice medicine and treat patients.

It is Allard's contention that the Information alleges only one crime: fraudulently obtaining a medical license from the Commonwealth. Under *McNally*, 107 S.Ct. 2875, and the Supreme Court's subsequent ruling in *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), Allard argues, obtaining a medical license by fraud does not deprive the Commonwealth of *property*, because the license, while it may be property in the hands of a licensed doctor, is not a thing of value (tangible or intangible) to the Commonwealth before it is issued. Thus, because the fraud charged did not involve a deprivation of property, Allard concludes, his conviction is invalid under *McNally*.

---

not more than $1,000 or imprisoned not more than five years, or both.
18 U.S.C. § 1341.

2. The record on appeal contains no report of how many hours of community service the defendant had performed when the District Court dismissed the Information.

On appeal, the government presented essentially three arguments. First, it asserted that the District Court misconstrued the Information by reading it in such a manner that only the Commonwealth could be considered a victim of Allard's scheme. Second, it argued that the Commonwealth has a sufficient property interest in medical licenses to satisfy *McNally* and *Carpenter*. And finally, as a procedural matter, the government properly reminded us that under 28 U.S.C. § 2255, when a defendant has pled guilty to an Information, courts are to give its language the broadest construction possible in order to save it from collateral attack. *Strauss v. United States*, 347 F.2d 691 (7th Cir.1965). The District Court's finding that the "information in this case clearly states the purpose: to obtain a medical license. Any employment by Worcester City Hospital was incidental to the goal of the scheme, as charged," is based on an incorrect and overly restrictive reading of the Information. *United States v. Allard*, No. 85–0464, slip op. at 4 (D.Mass. filed Feb. 25, 1988) [1988 WL 22435].

## II. *The Constitutional Standard*

As a fundamental matter, the Sixth Amendment to the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." Thus, an indictment or information "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Serino*, 835 F.2d 924, 929 (1st Cir.1987) (quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887,

2907, 41 L.Ed.2d 590 (1974)). Specifically, the indictment or information must "set forth all the elements of the offense without uncertainty or ambiguity." *Id.* When the state's entire prosecutorial apparatus is poised against the criminal defendant, he or she must receive fair notice of the charges in order to be able to prepare a complete defense.

When viewed in this light, Allard's Information meets every test for sufficiency recognized in this circuit. It fairly describes the crime and the victims. *United States v. Tomasetta*, 429 F.2d 978 (1st Cir.1970). It describes the offense "with sufficient clarity to show a violation of law, and enable the accused to know the nature and cause of the accusation against him." *United States v. Fusaro*, 708 F.2d 17, 23 (1st Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). It also conforms to the requirements of Rule 7(c) of the Federal Rules of Criminal Procedure. *United States v. Sedlak*, 720 F.2d 715, 719 (1st Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984) ("The indictment [or information] must be '... a plain, concise and definite written statement of the essential facts constituting the offense charged.'"). The test for sufficiency, therefore, is not whether, in hindsight, the indictment or information could have been more complete, *Dario Sanchez v. United States*, 341 F.2d 379, 380 (1st Cir.), *cert. denied*, 381 U.S. 940, 85 S.Ct. 1775, 14 L.Ed.2d 704 (1965), but rather whether it fairly identifies and describes the offense.[3]

Although *McNally* and *Carpenter* may raise questions concerning whether a medical license is property to the Commonwealth, that issue is not determinative of the case at bar. The Information contains sufficient notice and description of Allard's fraudulent actions toward Worcester City

---

**3.** We recognize that the broadest possible construction of an instrument may not be its most obvious reading. In some cases, the generous construction afforded an information or indictment on collateral attack could differ materially from a defendant's understanding of the charges at the time he pled to the information. We do not suggest this was the case here, but because we are cognizant of the possibility, we merely point out that, even in such circumstances, a defendant is not remediless. He can move to withdraw his guilty plea and the district court, if it finds that the variation between a defendant's perceptions and the construction necessary to sustain the charging instrument resulted in "manifest injustice," *United States v. Kobrosky*, 711 F.2d 449, 456–57 (1st Cir.1983), may grant relief.

Hospital to be sustained. Count One of the Information repeatedly links Allard's fraud in obtaining the medical license with his fraud in obtaining the internship at Worcester City Hospital. In fact, the Information charges that Allard contacted the Hospital first, on November 22, 1982, and only later, on March 17, 1983, applied to the Commonwealth for a license. Certainly, if Allard had secured an internship at a different hospital in a different state (and the Information alleges that he applied for a clinical rotation at a Florida hospital in early 1982), he would not have applied for a medical license in Massachusetts. The license may have no "value" as such in the hands of the Commonwealth, as Allard argued, but it also had no value in the hands of the defendant absent his internship at Worcester City Hospital. Reading the Information broadly and with the common sense required by law, it clearly describes a scheme to defraud the Hospital. On that basis alone it should be sustained against this collateral attack.

Allard also argues that the Information is defective because it does not specifically state that the Hospital provided any monetary compensation to Allard during his internship. We find that the phrase, "[t]he result of the scheme was that [the defendant] did in fact improperly practice medicine and treat patients," fills this purported gap. The activities described are ordinarily undertaken for remuneration. Read as a whole, the Information fairly put Allard on notice that he was charged with defrauding the Commonwealth, the Hospital, and others. The elements of the crime are described in great detail. Allard was not "indicted by implication," as his attorney argued before us, but rather by a constitutionally sufficient Information.

For the reasons stated above, we *vacate* the District Court's ruling of February 25, 1988, and remand for further proceedings consistent with this opinion.