UNITED STATES, Appellee,

v.

Raymond P. ALLARD,
Defendant, Appellant.

No. 89–2155.

United States Court of Appeals,
First Circuit.

Heard June 8, 1990.

Decided Feb. 28, 1991.

Alan R. Hoffman with whom Lynch, Brewer, Hoffman & Sands were on brief, for defendant, appellant.

Richard G. Stearns, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRES,* District Judge.

TORRES, District Judge.

This is another chapter in the continuing saga of Raymond Allard. It is presently before us on Allard's appeal from the District Court's denial of his motion to withdraw a plea of guilty to mail fraud on the ground that he was not informed of and did not understand the nature of the charge against him. For reasons hereinafter stated, we vacate the District Court's order and remand for reconsideration of the defendant's motion.

## BACKGROUND

On May 27, 1986, Allard pled guilty to Count One of a three count information charging him with mail fraud in violation of 18 U.S.C. § 1341. The information alleges that he engaged in a "scheme ... to defraud the Commonwealth of Massachusetts, its citizens, *and others*" (emphasis added), the purpose of which was to enable him "to obtain fraudulently a license to practice medicine."

* Of the District of Rhode Island, sitting by designation.

In Massachusetts, licenses to practice medicine are issued by the Massachusetts Board of Registration in Medicine (the "Board"). A limited license authorizes the holder to practice as an intern but only under the supervision of a specified hospital. Mass.Gen.Laws Ann. ch. 112, § 9 (West 1983 & Supp.1990). A full license, on the other hand, is issued to physicians who have fulfilled all applicable requirements including satisfactory completion of an internship. Mass.Gen.Laws Ann. ch. 112, § 2. In order to obtain a limited license, the applicant must be a graduate of an accredited medical school. If the school is one outside of the United States, he or she must also pass an examination administered by the Educational Commission for Foreign Medical Graduates (the "ECFMG"). *See* Mass.Gen.Laws.Ann. ch. 112, § 2.

In this case, the record reveals that Allard had an undergraduate degree in veterinary science and served as a medical corpsman during the Vietnam War. However, his grades fell short of the level required for admission to a medical school in the United States so he enrolled at the Universidad del Noreste located in Tampico, Mexico. While there, he discovered what he thought was a quicker way to achieve his career objective. He made arrangements to purchase a diploma from the Universidad Centro de Estudios Tecnologicos ("CETEC"), located in the Dominican Republic, without attending any classes there.

The information describes "the scheme" with which Allard was charged to include the following chronology of events. On September 2, 1982, Allard applied to take the ECFMG examination. In his application he falsely represented that he had satisfactorily completed a number of courses at CETEC and that he would graduate from that institution in June of 1983. Based on those misrepresentations, Allard was allowed to take the examination.

On November 22, 1982, Allard applied to Worcester City Hospital ("Worcester Hospital") for a position as an intern and once again falsely represented that he had completed various courses at CETEC and that

he expected to graduate in June, 1983. Four months later, after apparently passing the ECFMG examination, Allard applied to the Board for a limited license to practice as an intern at Worcester Hospital. In that application too, he repeated the misrepresentations regarding his qualifications.

Based on these false representations, Worcester Hospital eventually accepted him into its internship program. Allard began working there in June, 1983, after additional materials he mailed to the Board on June 20 evidently caused it to issue him a limited license while his application for a full license was pending.

The information contains three counts. Count One is based upon the June 20, 1983, mailing to the Board, and Counts Two and Three are based upon use of the mails in connection with Allard's November 22, 1982, application to Worcester Hospital for an internship and the subsequent notification of his appointment. The facts outlining the entire scheme are incorporated by reference into all three counts.

Allard's plea to Count One was entered pursuant to an agreement with the government that called for dismissal of the remaining two counts and a recommendation that he receive a suspended sentence. On May 27, 1986, the District Court conducted a hearing for the purpose of determining whether Allard's plea should be accepted. During the course of the plea colloquy, the District Court explained the charge to which Allard was pleading as follows:

> Now, the information in Count 1, the count to which you are offering to plead guilty, accuses you of having engaged in a *scheme to defraud the Commonwealth of Massachusetts, and by indirection, its citizens,* by claiming to have been graduated from a Medical School, when, in fact, you knew that you had not so graduated; and by having sent in furtherance of that scheme, a letter to the Massachusetts Board of Registration in Medicine on June 20th, 1983, including a $25 fee and an application for a limited medical license....

And what the Government will have to prove in order to sustain that charge is that you did, in fact, engage in such a scheme; that there was such a *scheme to get a medical license, or limited medical license*, without the necessary prerequisites, as defined by statute and regulation, and that, in fact, you did mail a letter in furtherance of the scheme or caused such a letter to be mailed.

Change of Plea Transcript at 5–6, May 27, 1986 (emphasis added).

After Allard assured the Court that he understood the charge and acknowledged that he had misrepresented his credentials to the Board, the Court accepted his plea. Accordingly, pursuant to the government's recommendation, Allard was given a two-year suspended sentence and placed on probation for a period of two years upon the condition that he perform 500 hours of community service.[1] At the same time, the government's motion to dismiss Counts Two and Three was granted.

The next development occurred on June 24, 1987, when the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In that case, it was held that the mail fraud statute applies only to attempts to obtain money or property and does not extend to schemes to deprive the citizenry of its intangible right to good government.

Shortly after the issuance of that opinion, Allard moved to vacate his conviction or set aside his sentence pursuant to 28 U.S.C. § 2255 contending that a license to practice medicine was not "property" within the meaning of *McNally*. The District Court agreed with that contention, and on February 26, 1988, entered an order vacating the conviction and dismissing the information.[2] In so doing, the Court expressly rejected the government's contention that, even if the Board could not have been deprived of any property, the information was still sufficient to charge a scheme to defraud Worcester Hospital. In that connection, the Court stated:

> The government does argue that the information can be construed to allege a deprivation of Worcester City Hospital's right to the professional services and qualifications for which it bargained when it hired defendant as a medical intern. *That, however, is not what the information charges.* Although the information does state that the result of the scheme was that defendant "did in fact improperly practice medicine and treat patients," it is the purpose, rather than the outcome, of the scheme that is crucial to a charge under section 1341.... The information in this case clearly states the purpose: to obtain a medical license. *Any employment by Worcester City Hospital was incidental to the true goal of the scheme, as charged.*

Memorandum of Decision at 3–4, February 25, 1988 (emphasis added).

The government appealed that order asserting both that the District Court misconstrued the information by reading it to include only the Commonwealth as a victim of Allard's scheme and also that the Commonwealth had a sufficient property interest in medical licenses to satisfy *McNally*. In considering that appeal, this court held that the information was sufficient to fairly identify and describe the attempt to obtain an internship at Worcester Hospital as part of the scheme to defraud and not merely incidental to it. Thus, we stated:

> Allard's Information meets every test for sufficiency recognized in this circuit. It fairly describes the crime and the victims. It describes the offense "with sufficient clarity to show a violation of law, and enable the accused to know the nature and cause of the accusation against him."

*United States v. Allard*, 864 F.2d 248, 250 (1st Cir.1989) (citations omitted) (*"Allard I"*).

---

1. Allard has, now, completed that sentence.

2. In its Memorandum of Decision of February 25, 1988, the Court stated: "Although the license may be property in the hands of defendant, it is not property to the Commonwealth either before or after it is issued." Memorandum of Decision at 3.

Accordingly, this Court vacated the District Court's ruling and remanded the case for further proceedings without reaching the *McNally* question. However, in so doing, we made the following observation in a footnote:

> We recognize that the broadest possible construction of an instrument may not be its most obvious reading. In some cases, the generous construction afforded an information or indictment on collateral attack could differ materially from a defendant's understanding of the charges at the time he pled to the information. We do not suggest this was the case here, but because we are cognizant of the possibility, we merely point out that, even in such circumstances, a defendant is not remediless. He can move to withdraw his guilty plea and the district court, if it finds that the variation between a defendant's perceptions and the construction necessary to sustain the charging instrument resulted in "manifest injustice," may grant relief.

*Allard*, 864 F.2d at 250 n. 3 (citation omitted).

On remand, the District Court reinstated Allard's conviction. In response, Allard demonstrated that he had read the aforesaid footnote by filing a motion to withdraw his guilty plea based on the assertion that his plea was not a knowing one within the meaning of Rule 11 or, alternatively, that withdrawal should be permitted under either the "fair and just reason" standard of Rule 32(d) or the "miscarriage of justice" standard of 28 U.S.C. § 2255. In addition, he requested an evidentiary hearing to determine whether, at the time he pled, he understood that he was charged with seeking to defraud Worcester Hospital. In support of that motion, Allard filed an affidavit containing the following statements:

> My understanding of the charge to which I offered to change my plea was that I had defrauded the Commonwealth of Massachusetts by making false statements on an application to obtain a limited license to practice medicine.... At no time did the Court explain to me that I was charged, in addition, with defraud-

ing Worcester City Hospital. In my own mind, I did not plead guilty to the latter charge.

> Finally, if the sole charge against me had been that I defrauded Worcester City Hospital and that, as a result, the Hospital lost money or property, I do not believe that I would have pleaded guilty. This is so because I believe that I had defenses available to me in defense of the charge related to my service at Worcester City Hospital which were not available to me in defense of the charge that I had defrauded the Commonwealth of Massachusetts.... I believe that Worcester City Hospital "got its money's worth" while I was employed as an intern.

Affidavit of Raymond P. Allard at 1–2, February 10, 1989.

On November 9, 1989, the District Court denied Allard's motion on the ground that he must have understood the charge and that no "miscarriage of justice" had occurred. The District Judge also apparently concluded that no evidentiary hearing was required. Allard then brought this appeal.

## DISCUSSION

Allard advances two arguments in support of his contention that he should have been permitted to withdraw his guilty plea. First, he contends that he was not informed of the true nature of the charge and that no proper determination was made that he understood the charge as required by Rule 11(c). Specifically, he asserts that he was not advised and did not understand that Count One charged him with acting pursuant to a scheme to defraud Worcester Hospital. He states that, if he had understood the charge in that way, he would not have pled guilty because he believed that he had a valid defense, namely that the hospital was to receive something of value in the form of his services as an intern. Allard's second argument is that the existence of such a defense together with what he characterizes as the involuntary and uninformed nature of his plea constitutes "fair and just reason" for vacating it pur-

suant to Rule 32(d) or, alternatively, would result in a "miscarriage of justice" within the meaning of 28 U.S.C. § 2255 if it is not vacated.

## I. *Mail Fraud—18 U.S.C. § 1341*

■■ Proof that a defendant is guilty of mail fraud under 18 U.S.C. § 1341 requires a showing that the defendant used the mails for the purpose of executing or attempting to execute a scheme to defraud. *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954); *United States v. Serrano,* 870 F.2d 1, 6 (1st Cir.1989). The essence of a "scheme to defraud," within the meaning of that statute, is the existence of a plan that *if* carried out would constitute a fraud. *See Serrano,* 870 F.2d at 6 (the essence of a "scheme to defraud," within the meaning of that statute, is the existence of a plan "conceived ... for the purpose of defrauding ... by means of false pretenses, representations or promises ..."). It is not necessary to establish that the intended victim was *actually* defrauded. *United States v. King,* 860 F.2d 54, 55 (2d Cir. 1988) (per curiam), *cert. denied,* 490 U.S. 1065, 109 S.Ct. 2062, 104 L.Ed.2d 628 (1989); *United States v. Lea,* 618 F.2d 426 (7th Cir.), *cert. denied,* 449 U.S. 823, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980); *New England Enterprises, Inc. v. United States,* 400 F.2d 58 (1968), *cert. denied,* 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969). Nor is it a defense that the victim received *something* in exchange even if it was equivalent in value to what the victim was deceived into relinquishing. *See King,* 860 F.2d at 55. The relevant inquiry is whether there was an intent to mislead the victim by inducing an uninformed consent to part with money or property. *McNally,* 483 U.S. at 358, 107 S.Ct. at 2880–81; *Edwards v. United States,* 249 F. 686 (6th Cir.), *cert. denied,* 248 U.S. 560, 39 S.Ct. 7, 63 L.Ed. 422 (1918). For purposes of this appeal, the scheme pursuant to which Allard is charged with acting is one to defraud Worcester Hospital. Therefore, in weighing his arguments, we must focus on whether he was informed of and understood that to be the charge.

## II. *The Asserted Defense*

■■ In making our determination, we need not be detained by the defense Allard has asserted. That defense is irrelevant to this appeal because it is insufficient on its face. In saying that, we are mindful of the fact that, in determining whether to permit withdrawal of a guilty plea, a court should not decide the merits of a proffered defense by resolving factual issues that are more properly decided at trial. *United States v. Schubert,* 728 F.2d 1364, 1366 (11th Cir.1984) (quoting *United States v. Morgan,* 567 F.2d 479 (D.C.Cir.1977)). However, when the defendant's factual allegations, even if true, fail to establish a cognizable defense, they do not provide a reason for permitting withdrawal of a plea. *United States v. Barker,* 514 F.2d 208, 220 (D.C.Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975); *see also United States v. Carr,* 740 F.2d 339, 345–47 (5th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985).

■ That is precisely the situation in this case. As previously noted, the fact that Allard's scheme contemplated that Worcester Hospital would be the recipient of Allard's services or that such services were actually performed does not exonerate Allard from criminal responsibility for mail fraud. *See King,* 860 F.2d at 55; *Lea,* 618 F.2d at 426; *United States v. Melton,* 689 F.2d 679 (7th Cir.1982). What must be determined is whether the scheme represented an effort to deceive the hospital into hiring him. *See United States v. Richerson,* 833 F.2d 1147, 1156–57 (5th Cir.1987).

In this case there is no question that the hospital could not and would not have hired Allard had it not been for his misrepresentations regarding his qualifications. Under Massachusetts law, a hospital is not permitted to hire an intern unless the applicant has completed not less than three and one-half years of study at an accredited medical school and holds at least a limited license to practice medicine. Mass.Gen.Laws Ann. ch. 112, § 9. Consequently, Allard cannot contend that his efforts to mislead the hos-

pital into paying for his services as an intern were anything less than fraudulent.

■ Even if there were merit to the proffered defense, it would be relevant only if Allard failed to understand the nature of the charge to which he pled. Allard's decision was the product of a plea bargain. In reaching a plea bargain, a defendant assesses the likelihood of conviction and balances that against the relative severity of the sentence he expects to receive pursuant to the agreement and that which could be imposed upon conviction. In many cases, that process results in a compromise pursuant to which the defendant makes a conscious decision to relinquish a perceived defense. As long as that decision is not the product of coercion or misinformation, the defendant may not later renege on the agreement on the ground that he miscalculated or belatedly discovered a new defense. To hold otherwise would render plea agreements and the pleas entered pursuant to them meaningless. *Brady v. United States,* 397 U.S. 742, 756–57, 90 S.Ct. 1463, 1473–74, 25 L.Ed.2d 747 (1970); *United States v. Hurtado,* 846 F.2d 995, 997 (5th Cir.), *cert. denied,* 488 U.S. 863, 109 S.Ct. 163, 102 L.Ed.2d 133 (1988); *see Schubert,* 728 F.2d at 1365.

On the other hand, if, as Allard claims, he was misled into believing that the charge encompassed only a scheme to defraud the Commonwealth, he cannot be deemed to have waived any defense vis-à-vis Worcester Hospital. *Schubert,* 728 F.2d at 1366. Therefore, we now turn to the issue of whether Allard was informed of and understood that he was charged with a scheme to defraud the hospital.

### III. *Allard's Understanding of the Charge*

■ Allard's claim that he was not informed and did not understand that Count One charged him with acting pursuant to a scheme to defraud both Worcester Hospital and the Commonwealth of Massachusetts forms the basis for each of the three theories under which he seeks relief. If that claim has merit, it is clear that he must be

permitted to withdraw his plea whether the standard employed is one of voluntariness under Rule 11, "fair and just reason" contained in Rule 32(d) or "miscarriage of justice" as set forth in 28 U.S.C. § 2255.

### A. Rule 32(d) and 28 U.S.C. § 2255

■ Rule 32(d) authorizes the court to permit withdrawal of a guilty plea *before* sentence is imposed upon a showing of "fair and just reason." *After* sentencing, it allows a guilty plea to be set aside only on direct appeal or pursuant to a motion under 28 U.S.C. § 2255 which requires the defendant to establish that a "miscarriage of justice" would otherwise result. Although the "fair and just reason" test is less stringent, withdrawal is not permitted as a matter of course even prior to the imposition of sentence. *United States v. Pellerito,* 878 F.2d 1535, 1537 (1st Cir. 1989); *United States v. Ramos,* 810 F.2d 308, 311 (1st Cir.1987); *United States v. Kobrosky,* 711 F.2d 449, 454 (1st Cir.1983).

In determining whether the defendant has borne the burden of establishing either a "fair and just reason" or a "miscarriage of justice," there are a number of factors that should be considered. The most significant of them and one that is common to both determinations is whether the plea may be regarded as knowing and voluntary within the meaning of Rule 11. *Roberson v. United States,* 901 F.2d 1475, 1477 (8th Cir.1990); *Pellerito,* 878 F.2d at 1537; *Ramos,* 810 F.2d at 312; *Kobrosky,* 711 F.2d at 454. Another factor applicable to both tests is the extent to which the government has been prejudiced by any delay between the entry of a plea and a motion to withdraw it. *Kobrosky,* 711 F.2d at 455; *Ramos,* 810 F.2d at 313; *United States v. Lopez Sanchez,* 709 F.Supp. 302, 310 (D.P. R.1989).

In this case, the government argues that Allard's plea should not be vacated because the principal witness against him is no longer available to testify. Clearly, that constitutes the kind of prejudice that may be considered under either the "fair and just reason" standard or the "miscarriage of justice standard." However, we hold

that, for purposes of Rule 32(d) and § 2255, a delay that prejudices the government's case is a factor weighing against withdrawal only if the defendant can be blamed for the delay. Thus, a defendant who procrastinates in discovering or asserting his rights may be precluded from withdrawing his plea, if, as a consequence, the government's case is adversely affected. On the other hand, when a defendant is not responsible for the delay and acts as promptly as circumstances permit, he should not be penalized for any prejudice to the government's case resulting from that delay. In other words, we must look to the reason for the delay as well as any attendant prejudice to the government's case.

In this case, Allard moved to withdraw his plea 32 months after entering it but only three weeks after this Court ruled Count One broad enough to charge a scheme to defraud Worcester Hospital. Therefore, if knowledge regarding that aspect of the charge can be imputed to Allard, the prejudice to the government's case occasioned by his tardiness in raising the issue would constitute an additional reason for denying his motion to withdraw his plea. Conversely, if there is substance to Allard's assertion that he had neither notice nor understanding of that facet of the charge until *Allard I* was decided, any prejudice to the government's case occasioned by the delay up to that time should not be a reason for denying his motion. Consequently, we turn our attention to whether Allard's plea was informed and knowing within the meaning of Rule 11.

### B. Rule 11

By entering a guilty plea, a defendant, in effect, waives a number of constitutional rights. In order for that waiver to be valid, due process requires that the plea amount to a voluntary and "intentional relinquishment or abandonment of a known right or privilege." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).

One of the purposes of Rule 11 is to implement that requirement by seeking to assure that a defendant who pleads guilty does so with an "understanding of the nature of the charge and the consequences of his plea." *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171; *Woodward v. United States,* 426 F.2d 959, 962 (3rd Cir.1970). The rule is also designed to produce a complete record of the factors relevant to that determination so as "to eliminate any need to resort to a later factfinding proceeding in this highly subjective area." *McCarthy,* 394 U.S. at 469, 89 S.Ct. at 1172 (quoting in part *Heiden v. United States,* 353 F.2d 53, 55 (9th Cir.1965)); *see also United States v. Daniels,* 821 F.2d 76, 80 (1st Cir.1987). Consequently, Rule 11(c) provides that:

(c) *Advice to Defendant.* Before accepting a plea of guilty ... the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ...

(1) The nature of the charge to which the plea is offered....

Fed.R.Crim.P. 11(c). The plain language of the rule requires the court both to inform the defendant of the nature of the charge and make a determination that he understands it. *Mack v. United States,* 635 F.2d 20 (1st Cir.1980).

The effect of a failure to comply with the requirements of Rule 11 depends upon the nature of the failure. Mere technical violations of its procedural requirements do not warrant setting aside a plea. That is especially true if the defendant was not misled or the omission did not affect his decision. *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *United States v. Darling,* 766 F.2d 1095, 1098 (7th Cir.), *cert. denied,* 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985); *United States v. Dayton,* 604 F.2d 931, 939 (5th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Indeed, Rule 11 was amended in 1983 to expressly provide that variances from procedural requirements that do not affect substantial rights constitute harmless error and are to be disregarded. Rule 11(h).

On the other hand, a violation that implicates one of the rule's "core concerns" mandates that the plea be set aside.

*McCarthy,* 394 U.S. at 471–72, 89 S.Ct. at 1173–74; *United States v. Cantor,* 469 F.2d 435, 437 (3rd Cir.1972). *See also* ABA Standards for Criminal Justice, Pleas of Guilty §§ 14–1.4 and 14–2.1 (2d ed. 1980 & Supp.1986). It cannot be disputed that an adequate explanation of the charge and a determination that the defendant understands it are two of those core concerns. *McCarthy,* 394 U.S. at 467, 471, 89 S.Ct. at 1171, 1173; *see United States v. Buckles,* 843 F.2d 469, 473 (11th Cir.1988), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989); *Mack,* 635 F.2d at 23.

 There is no talismanic test for determining whether the core concerns of Rule 11 have been satisfied. The manner in which the charge is explained and the method for determining the defendant's understanding necessarily vary from case to case depending upon the capacity of the defendant and the attendant circumstances. *Dayton,* 604 F.2d at 937–38; Rule 11 Advisory Committee Notes; Wright and Miller, *Federal Practice and Procedure* § 173 at 587–88 (2d ed. 1982 & Supp.1990). In making that determination, the court should not exalt form over substance but should look to the reality of the situation as opposed to the ritual. *United States v. Bell,* 776 F.2d 965, 971 (11th Cir.1985), *reh'g denied, en banc,* 782 F.2d 108, *cert. denied,* 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986). Moreover on appeal, the District Court's subsidiary factfinding in connection with plea-withdrawal motions based on Rule 11 violations will be set aside only for clear error, and, except for errors of law, its conclusions will be overturned only for "demonstrable abuse of discretion." *Pellerito,* 878 F.2d at 1538; *see also United States v. Barker,* 514 F.2d 208, 220 (D.C.Cir.1975).

### 1. *Explanation of Charge*

As previously noted, the District Court explained Count One as charging Allard with use of the mails pursuant to a scheme to defraud the Commonwealth of Massachusetts by misrepresenting his educational qualifications in order to obtain a medical license. *See* Change of Plea Hearing at 5–6, May 27, 1986. At no time was any reference made to any scheme to defraud Worcester Hospital. Allard contends that this combination of factors rendered the explanation inadequate to apprise him that the charge included a scheme to defraud the Worcester Hospital, and that it misled him into believing that he was charged only with using the mails pursuant to a scheme to defraud the Commonwealth.

The government counters with two reasons why it says the explanation Allard received was sufficient to satisfy the requirements of Rule 11. First, it argues that the information was adequate, on its face, to inform Allard that Count One charged him with seeking to defraud the hospital. Second, the government asserts that any deficiency in the trial judge's explanation was cured by the prosecutor's recitation of the facts underlying the plea which it says adequately identified that as part of the charge. We do not find either of these arguments persuasive.

In asserting that the information adequately informed Allard of the charge against him, the government relies on the opinion in *Allard I* that describes the information as "fairly put[ting] Allard on notice that he was charged with defrauding the Commonwealth, the Hospital, and others." 864 F.2d at 251. It is true that simply reading an indictment or information to a defendant may satisfy the requirements of Rule 11 if the charging document clearly describes the offense. Fed.R.Crim.P. 11, Advisory Committee Notes on 1974 Amendments; *Mack,* 635 F.2d at 25 n. 2; *Dayton,* 604 F.2d at 938. That is particularly so when the offense is not complex and the defendant is, like Allard, well-educated and relatively sophisticated. *See Kobrosky,* 711 F.2d at 455; *United States v. Acevedo–Ramos,* 619 F.Supp. 570, 575 (D.P.R.1985), *aff'd, United States v. Ramos,* 810 F.2d 308 (1st Cir.1987).

However, in this case, the information was *not* read to Allard during the course of the plea colloquy. Nor does the record contain any acknowledgment by Allard that he had previously read it. As a result, there is nothing "in the record at the time

the plea [was] entered" indicating that Allard had been informed of the nature of the charge against him. *McCarthy*, 394 U.S. at 470, 89 S.Ct. at 1173. Therefore, under these circumstances, no matter how clearly the information may have described the charge, it cannot be viewed as satisfying the mandate of Rule 11(c) that a defendant be informed of the nature of the charge.

Nor was the void filled by the prosecutor's recitation and Allard's admission of the facts underlying the charge. Certainly, as Allard concedes, the explanation of the charge need not come directly from the court. It is sufficient that the explanation be made in the court's presence and that requirement is satisfied if the prosecutor adequately explains the charge during the course of the plea colloquy. *Dayton*, 604 F.2d at 943. *See also Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

In this case, the government contends that the prosecutor's recitation of the factual basis for Allard's plea did contain such an explanation. Specifically, it cites the following statement:

> Now, to perform as an intern in a Massachusetts hospital, one is required to have at least a limited license to practice medicine....
>
> *To obtain that limited license*, on March 17th, 1983, Mr. Allard made application *to the Board of Registration* in Medicine in Massachusetts, *through Worcester City Hospital* ....

Change of Plea Hearing at 13–14, May 27, 1986 (emphasis added).

However, if anything, that statement emphasizes that the gist of the scheme as explained to Allard, was an attempt to fraudulently obtain a *license* from the *Board* in which the hospital was only a mechanism for achieving that purpose. Hence, the statement makes reference to the fact that the application mailed *"to the Board"* on March 17, 1983 was made *"through"* the hospital. It does not describe the scheme as one to defraud the hospital. Therefore, we fail to see how that statement "informed" Allard of "the nature of the charge" now before us.

### 2. *Understanding of Charge*

The inadequacy of the explanation given to Allard is matched by indications that there was no real determination that Allard understood Count One to include a scheme to defraud the Worcester Hospital. The most compelling of those indications is that the District Court itself, obviously, did not read Count One to charge such a scheme. After determining that *McNally* precluded any prosecution for defrauding the Commonwealth, the District Judge dismissed Count One saying:

> The Government does argue that the information can be construed to allege a deprivation of Worcester City Hospital's right to the professional services and qualifications for which it bargained when it hired defendant as a medical intern. *That, however, is not what the information charges.*

Memorandum of Decision at 3, February 25, 1988 (emphasis added).

We cannot fault the District Court for that perception, especially since Counts Two and Three dealing with mailings to and from the hospital were dismissed at the government's request pursuant to the plea agreement. However, regardless of the reason, the District Judge's belief that Count One charged a scheme to defraud only the Commonwealth makes it difficult to accept the proposition that the Court determined that Allard understood it also to include a scheme to defraud the hospital.

As the government points out, the District Judge denied Allard's motion to withdraw his plea on the basis that he must have understood the charge in that way. However, that conclusion was apparently based on the view that because *Allard I* held that Count One described a scheme to defraud the hospital, Allard, as a well educated man with competent counsel, must have understood that. Thus, the District Court stated:

> On a previous appeal, the First Circuit found that the information in this case fairly identified and described the offense and that it contained "sufficient notice and description of Allard's fraudu-

lent actions toward Worcester City Hospital." At the plea colloquy, I specifically determined that the defendant knew that he was pleading guilty to the first count of the information.

Memorandum of Decision at 4, November 9, 1989 (citation omitted).

We believe those two premises and the District Court's conclusion to be a flawed syllogism because it equates the Sixth Amendment standard for determining the sufficiency of an indictment or information with the requirement of both Rule 11 and the Due Process Clause that a defendant entering a guilty plea must possess an understanding of the charges. The fact that the two standards are not synonymous was alluded to in a footnote in *Allard I* which states:

In some cases, the generous construction afforded an information or indictment on collateral attack could differ materially from a defendant's understanding of the charges at the time he pled to the information. We do not suggest this was the case here, but because we are cognizant of the possibility, we merely point out that, even in such circumstances, a defendant is not remediless. He can move to withdraw his guilty plea and the district court, if it finds that the variation between a defendant's perceptions and the construction necessary to sustain the charging instrument resulted in "manifest injustice," may grant relief.

*Allard,* 864 F.2d at 250 n. 3 (citation omitted).

As that footnote implies, the Sixth Amendment standard is a purely objective one. The yardstick for measuring compliance is whether the indictment or information fairly informs a reasonably intelligent defendant of the charge against him and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Allard,* 864 F.2d at 250 (citing *United States v. Serino,* 835 F.2d 924, 929 (1st Cir.1987)). On the other hand, the Rule 11 standard takes into account the individual defendant's level of understanding. Consequently, a mere reading of the indictment or information does not al-

ways satisfy the requirement of Rule 11 particularly when the charges are complex and the defendant possesses appreciably less than average intelligence.

As previously noted, we do not think that Allard can be characterized as having less than average intelligence. Nevertheless, the sufficiency of the information for Sixth Amendment purposes cannot be equated with Allard's understanding of the charge for purposes of Rule 11.

## CONCLUSION

For all of the foregoing reasons, we conclude that Allard was not informed that Count One charged him with acting pursuant to a scheme to defraud both the Commonwealth of Massachusetts *and* Worcester City Hospital. We further conclude that no meaningful determination was made that Allard understood the charge in that way. Consequently, the core concerns underlying Rule 11(c) have not been satisfied. Therefore, we vacate the District Court's order denying Allard's motion to withdraw his guilty plea and remand the case to the District Court for further proceedings consistent with this opinion.

In so doing, we note that Count One charges Allard with acting pursuant to a scheme to defraud *both* the Commonwealth of Massachusetts and Worcester Hospital. We also note that our ruling deals with the charge only insofar as the scheme regarding the hospital is concerned. Finally, we note that *Allard I* vacated the District Court's previous order dismissing Count One on the basis of *McNally* but made no determination regarding *McNally's* applicability to the scheme to defraud the Commonwealth. We cannot now make such a determination because that issue was neither briefed nor argued before us.

Accordingly, in determining whether Allard should be permitted to withdraw his plea, the District Court should again consider whether *McNally* forecloses conviction for actions pursuant to the scheme to defraud the Commonwealth. If the District Court concludes that it does not, Allard's motion to withdraw should again be

denied because he, admittedly, understood that aspect of the charge, and it is sufficient to support conviction. On the other hand, if the District Court determines that *McNally* precludes conviction for scheming to defraud the Commonwealth, it should grant Allard's motion to withdraw his plea and the government may, if it chooses, again seek review with respect to the *McNally* issue.