UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 91-2118

 UNITED STATES,

 Appellee,

 v.

 FRANK JAPA,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Walter Jay Skinner, U.S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 

 

Gordon R. Blakeney, Jr. for appellant.
 
William F. Sinnott, Assistant United States Attorney, with whom
 
A. John Pappalardo, United States Attorney, was on brief, for
 
appellee.

 

 May 24, 1993
 

 BOWNES, Senior Circuit Judge. In this appeal,
 BOWNES, Senior Circuit Judge.
 

defendant-appellant, Frank Japa, seeks to vacate his plea of

guilty because of alleged errors made by the district court

during the change of plea hearing. Japa also claims that the

district court erred during the sentencing hearing.

 After an undercover operation, Japa and one Jos 

Puello were arrested for drug trafficking. A two-count

indictment was returned against them. Count One charged both

with conspiring to possess cocaine with intent to distribute

in violation of 21 U.S.C. 841(a)(1) and 846. Count Two

charged them with possessing 500 grams or more of cocaine

with intent to distribute within 1,000 feet of a public or

private school in violation of 21 U.S.C. 841 (a)(1) and

845(a) (now 860) and 18 U.S.C. 2. Puello is not involved

in this appeal.

 After initially pleading not guilty, defendant

changed his plea to guilty. There was no plea bargain.

Because defendant was Spanish-speaking, an interpreter was

used during both the change of plea and sentencing hearings.

Defendant was sentenced to seventy months' incarceration to

be followed by a supervised release term of ninety-six

months. Because defendant was impecunious, no fine was

imposed; he was ordered to pay a special assessment of $100.

 -2-
 2

 The Change of Plea Proceedings
 

 Defendant attacks the plea proceedings on three

grounds: (1) he was not adequately informed of the maximum

possible sentence; (2) his plea was not voluntary because he

did not understand the charges against him; and (3) there was

not an adequate record of a factual basis for accepting his

plea. We discuss these claims seriatim.

 Informing Defendant of Maximum Possible Sentence
 

 Although there may have been some confusion at the

outset of the maximum-penalty discussion, the transcript of

the change of plea hearing shows that defendant was

adequately informed of and understood the maximum penalty he

faced. A resum of the plea hearing follows.

 Defendant was asked by the court what the maximum

sentence on Count One was. He replied, "I think it is five

years." The court said, "I thought it was 15." The

Assistant United States Attorney then stated:

 MR. O'CONNOR: Your Honor, it's 20
 years. But I would also note that it's
 going to be a sentencing issue, but the
 quantity of cocaine that is relevant with
 respect to both Counts 1 and 2 is at
 least 500 grams, so at a minimum he will
 be in a range under the minimum mandatory
 provision of five to 40 years. This is
 statutory, two million-dollar fine, $50
 on each count, and a four-year term of
 supervised release, at least, on each
 count.

Defendant was then asked by the court, "Do you understand

that?" He replied, "Yes, sir." He was then asked if he

 -3-
 3

understood that "all of that can be added up, the two counts

added together." He replied, "Yes." It was then explained

to defendant that the five-year statutory minimum was the

"floor." The Assistant United States Attorney then described

the guideline range:

 The guideline range is 63 to 78.
 However, I would note that in Count 2 the
 Court will notice he is charged with
 distribution within a thousand feet of a
 school yard, which allows the Court to
 punish up to two times. The guidelines
 say it would be a two level adjustment
 upwards if the government proves at
 sentencing that it was within a thousand
 feet of a school yard, which would put
 him within a range of 78 to 97 but then
 he may get acceptance of responsibility
 which would put him back to 63 to 78. So
 really what we're talking about is
 somewhere in the neighborhood of five to
 six years, five to six and a half years.

After the explanation of the guideline range was completed,

the court asked defendant if he understood what the United

States Attorney had been talking about. Defendant replied,

"Yes, sir." The following colloquy then took place:

 THE COURT: Do you understand that I'm
 obliged to sentence within the guidelines
 unless there is some special
 circumstance? And if there are special
 circumstances, I can go above the
 guidelines or below, I can depart from
 the guidelines, up to the maximum, which
 I think is 40 years on each count for a
 possible 80 years. In general, the
 sentence will be within the guidelines as
 more or less described by the U. S.
 Attorney.

 THE DEFENDANT: Yes.

 -4-
 4

 Following this, the court asked defendant if anyone

had told him "what sentence the Court would, in fact, impose

in the event of a plea of guilty?" The defendant replied

that his attorney had told him he would serve "about one year

and a half or something like that." The court pointed out

that it had just been explained to defendant that the minimum

sentence was five years. The court then asked defendant's

attorney if he had an explanation for what defendant had

stated. Defendant's attorney stated: "I don't have an

explanation because it didn't occur." The attorney said he

discussed the guidelines with defendant without the benefit

of an interpreter. The attorney then suggested that the

court ask defendant "if he understands . . . that the

guidelines go anywhere from four to six years generally."

The court then stated to defendant:

 Mr. Japa, there is no way that anybody
 could have told you what I am going to do
 because I don't know what I'm going to
 do, and I will come up with a sentence
 somewhere within the ranges, in all
 likelihood, that we have been talking
 about, that is five to six and possibly
 seven years. Do you understand that?

 THE DEFENDANT: Yes, sir.

 Defendant was then asked if he wanted to change his

plea. After a discussion with his attorney, with an

interpreter present, defendant stated that he wished to go

forward with a plea of guilty. In answer to the court's

 -5-
 5

question, "Is your plea of guilty entirely free and

voluntary?", the defendant answered, "Yes."

 Based on the record of the change of plea hearing,

we find that defendant was properly informed of the maximum

penalty provided by law and that he understood the

consequences of pleading guilty.

 Defendant also alleges that he was inadequately

informed of the term of supervised release he could be

required to serve. Defendant was, in fact, sentenced to the

precise term of supervised release of which he had been

informed at the hearing.

 Voluntariness of Plea
 

 The standard for setting aside a plea that has been

entered and sentence imposed is narrow. Defendant must show

a fundamental defect or a miscarriage of justice. Fed. R.

Crim. P. 32(d) provides:

 (d) Plea Withdrawal. If a motion for
 (d) Plea Withdrawal.
 withdrawal of a plea of guilty or nolo
 contendere is made before sentence is
 imposed, the court may permit withdrawal
 of the plea upon a showing by the
 defendant of any fair and just reason.
 At any later time, a plea may be set
 
 aside only on direct appeal or by motion
 
 under 28 U.S.C. 2255. (Emphasis
 
 added.)

It is the last sentence that is implicated here. The Note of

the Advisory Committee on the Federal Rules of Criminal

Procedure discussing the 1983 amendment to Rule 32(d) states

in pertinent part:

 -6-
 6

 Under the amendment, a defendant who
 proceeds too late to come under the more
 generous "fair and just reason" standard
 must seek relief under 2255, meaning
 the applicable standard is that stated in
 Hill v. United States, 368 U.S. 424
 
 (1962): "a fundamental defect which
 inherently results in a complete
 miscarriage of justice" or "an omission
 inconsistent with the rudimentary demands
 of fair procedure."

 Moreover, Rule 11, which governs plea procedures,

expressly provides in part (h): "Any variance from the

procedures required by this rule which does not affect

substantial rights shall be disregarded."

 With this standard of review in place, we consider

defendant's arguments. Defendant contends that his guilty

plea was not voluntary because the record of the plea

colloquy does not show that he understood the charges against

him. Specifically, defendant asserts that the record does

not establish that he understood the quantity of drugs he was

charged with possessing, the charge of conspiracy, and the

element of intent.

 We start our analysis with the transcript of the

change of plea proceedings:

 THE COURT: This indictment suggests
 that you --- it doesn't suggest, it
 charges you with combining, conspiring,
 confederating and agreeing with Jose
 Puello and with other persons to
 knowingly and intentionally possess a
 mixture containing cocaine with an intent
 to distribute it on or about August 29th,
 1990. Now, did you agree to possess a
 mixture containing cocaine on that day?

 -7-
 7

 THE DEFENDANT: Yes, sir.

 THE COURT: With Mr. Puelloand others?

 THE DEFENDANT: Yes, sir.

 THE COURT: All right. And did you
 intend to distribute the cocaine?

 THE DEFENDANT: Yes, sir.

 THE COURT: And on September 3rd,
 1990, did you and Mr. Puello, possess 500
 grams or more of a mixture containing
 cocaine within a thousand feet of a
 public school in the City of Lynn?

 THE DEFENDANT: Yes, sir.

After the prosecutor had summarized the government's evidence

the following colloquy took place:

 THE COURT: Is that summary
 essentially true, Mr. Japa?

 THE DEFENDANT: Basically.

 THE COURT: In what respect is it not?

 THE DEFENDANT: About the whole amount
 of the cocaine.

 THE COURT: What does he say?

 THE DEFENDANT: I was saying it was a
 kilo and I sold more, that sort of thing.
 I didn't say any of that.

 THE COURT: You did try to sell them a
 pound or a half kilo?

 THE DEFENDANT: That was the truth,
 but no more than that.

 THE COURT: All right. Do you know of
 any reason why the Court should not
 accept your plea of guilty?

 THE DEFENDANT: No.

 -8-
 8

 During the prosecutor's summary of the evidence it

was made clear that, although originally defendant had agreed

to provide one kilo of cocaine to the government informant,

the amount provided was one-half of a kilo. A gram is one

thousandth of a kilogram; 500 grams, which was the amount

defendant was charged with possessing, is one-half of a

kilogram, or slightly more than one pound. We hold that the

record establishes that defendant understood the amount of

drugs he was charged with possessing.

 We also find, based on the record, that defendant

understood he was charged with conspiring with others to

possess and distribute 500 grams of cocaine. The district

court told defendant he was charged in the indictment "with

combining, conspiring, confederating, and agreeing with Jose

Puello and with other persons," etc. Defendant gave

affirmative answers ("Yes, Sir") to two questions by the

court asking whether he agreed with Puello and others to

possess cocaine on August 29th. Defendant did not advise the

court either himself or through counsel that he did not

understand the conspiracy charge. We do not think that,

where a defendant is represented by counsel,1 and no

specific claim is made that the defendant does not understand

 

1. Defendant has indicated that there may be a claim of
incompetency of counsel waiting in the wings. Such a claim
is not an issue in this case and except for noting it, we
make no comment.

 -9-
 9

a question or explanation by the court as to what is charged

in an indictment, the court is required to do more than

explain the charges in plain understandable language. The

conspiracy charge met this test. We add that a detailed

explanation of "conspiracy" with its many nuances would

probably result in confusion and bewilderment of a defendant.

 Understanding of Intent Factual Basis for Plea
 

 Defendant's claim that the record is inadequate to

establish that he understood the intent element of the crimes

charged necessarily includes his contention that there was an

inadequate factual basis for accepting a plea of guilty, as

we explain below.

 We start our analysis with the indictment. Count

One charges as follows. "From on or about August 29, 1990

and continuing to on or about September 3, 1990" in Lynn,

Massachusetts, the defendants Frank Japa and Jos Puello did

conspire "knowingly and intentionally to possess with intent
 

to distribute" 500 grams of cocaine. The court asked
 

defendant two separate questions: did he possess the cocaine

and did he intend to distribute it. Defendant answered "yes"

to both questions. This was sufficient to establish that

defendant understood the element of intent as to Count One.

 A problem arises, however, as to the adequacy of

the court's question covering Count Two. Count Two charges

that "On or about September 3, 1990" the defendants, Japa and

 -10-
 10

Puello, "did knowingly and intentionally possess with intent

to distribute 500 grams" [a mixture containing cocaine]. . .

"and did so within 1000 feet" [of a public or private

school]. The court's question of defendant on this count,

however, omitted any inquiry as to intent. Defendant was not

asked whether he intended to possess and distribute the
 

cocaine within 1,000 feet of a school. The court asked only

whether defendant and Puello "did possess 500 grams" of a

mixture containing cocaine within 1,000 feet of a public

school. This omission was compounded by the failure of the

government to say anything about a school at all in its

statement of proof.

 At the outset of our discussion we frame the issue

before us: Was the omission of an intent inquiry by the

district court, combined with the failure of the prosecutor

to include in his proof statement any reference to a school,

"a fundamental defect [in the plea proceeding] which

inherently results in a complete miscarriage of justice" or

"an omission inconsistent with the rudimentary demands of

fair procedure?" Hill v. United States, 368 U.S. 424, 428
 

(1962). Or to put a different cast on it, did the two

omissions affect substantial rights of defendant? Fed. R.

Crim. P. 11(h). We think not, for the reasons that follow. 

 The presentence report, in the section on offense

conduct, contains this statement: "Japa's apartment was

 -11-
 11

within 1000 feet of a schoolyard in Lynn."2 There was no

objection to this or any other statement in the PSI.3 We

held in United States v. Zorrilla, 982 F.2d 28, 30-31 (1st
 

Cir. 1992), that information in the presentence report and/or

adduced at the probable cause hearing was sufficient to

satisfy the elements of the crime charged even though the

district court judge failed to establish a factual basis for

the plea at the hearing. The defendant here admitted to

possessing cocaine within 1,000 feet of a public school. He

also admitted in answer to questions by the court covering

Count One that he and Puello possessed and intended to

distribute 500 grams of cocaine. It is obvious that Counts

One and Two referred to the same cocaine a one-half kilo

block. Our focus is on whether defendant's plea was

voluntary, not whether the government proved him guilty

beyond a reasonable doubt. We said in United States v.
 

Allard, 926 F.2d 1237, 1244 (1st Cir. 1991):
 

 The effect of a failure to comply with
 the requirements of Rule 11 depends upon
 the nature of the failure. Mere
 technical violations of its procedural
 requirements do not warrant setting aside
 a plea. That is especially true if the
 defendant was not misled or the omission
 did not affect his decision.

 

2. The cocaine had been taken from defendant's apartment
and placed in a car where it was seized. 

3. We discuss defendant's contentions relative to the PSI
infra.
 

 -12-
 12

 We have read the transcript of the change of plea

hearing carefully, bearing in mind that defendant needed an

interpreter to translate from English to Spanish and vice

versa. Defendant never suggested that he did not understand

any part of what was being said to him or about him. There

was no complaint about the competency of the interpreter. We

conclude that defendant's plea was knowing and voluntary.4

 Sentencing
 

 Defendant claims that the district court erred by

failing either to inquire directly of defendant whether he

had an opportunity to review and discuss the presentence

report, or to have the record reflect that defendant and

counsel had an adequate opportunity for such review. Neither

claim is supported by the record.

 

4. Because of the context of this case, we see no need to
decide whether the schoolyard statute, 21 U.S.C. 860, is
ambiguous and whether intent to distribute within the
schoolyard zone has to be proven by the government, or
whether it is irrelevant or can be imputed to the defendant
so long as he possesses an amount of illegal substances from
which intent to distribute may reasonably be inferred. To
date, Courts of Appeal in the District of Columbia, Third and
Fifth Circuits have held that the government is not required
to prove intent to distribute within the protected zone. See
 
United States v. McDonald, No. 92-3047, slip. op. at 5 (D.C.
 
Cir. April 30, 1993); United States v. Rodriguez, 961 F.2d
 
1089, 1092 (3rd Cir. 1992); United States v. Wake, 948 F.2d
 
1422, 1430 (5th Cir. 1991). District courts in the Northern
District of Illinois and the Southern District of New York
have required the government to prove intent to distribute
within the protected zone. See United States v. Testa, 768
 
F. Supp. 221, 223 (N.D. Ill. 1991); United States v. Coates,
 
739 F. Supp. 146, 153 (S.D.N.Y. 1990); United States v.
 
Roberts, 735 F. Supp. 537, 543 (S.D.N.Y. 1990); United States
 
v. Liranzo, 729 F. Supp. 1012, 1014 (S.D.N.Y. 1990).
 

 -13-
 13

 At the outset of the disposition hearing,

defendant's attorney was asked, "was the pre-sentence

investigation report reviewed by you and your client?" The

answer was "Yes." The attorney stated, in answer to

questions by the district court, that he had no objections to

any of the factual statements in the report and that there

were no legal issues in dispute. Then followed a rather

lengthy argument by defendant's attorney that defendant was

entitled to a minor-role point deduction. The Assistant

United States Attorney pointed out that the issue was moot

because under the statute the minimum sentence was five

years. The court correctly held that "the minimum mandatory

trumps the guidelines." After further discussion by the

Assistant United States Attorney and defense counsel as to

defendant's role in the offense, the court sentenced

defendant to imprisonment "for 70 months, 96 months

supervised release, no fine, no restitution, and a hundred

dollars special assessment." The sentence was within the

guideline range of 63 to 78.

 The statements of defense counsel show that the

district court did inquire as to whether defendant and his

counsel had an adequate opportunity to review the presentence

report. Defense counsel's answer to the court's question on

this score and his argument on his client's role in the

offense showed that defendant's attorney was familiar with

 -14-
 14

the presentence report and the factual and legal conclusions

contained therein. Moreover, defendant has not pointed out

to us any inaccuracies in the presentence report. This means

that even if there were an error in the manner the court

conducted the disposition hearing, and we have found none, it

would be harmless.

 Affirmed. 
 Affirmed.
 

 -15-
 15