USCA1 Opinion

 

 February 19, 1993 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 92-1536 UNITED STATES, Appellant, v. BARKER STEEL CO., INC., AND ROBERT B. BRACK, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Fuste,* District Judge. ______________ ____________________ Peter A. Mullin, Assistant United States Attorney, with whom _______________ A. John Pappalardo, United States Attorney, and Andrew E. ____________________ __________ Lauterback, Special Assistant United States Attorney were on __________ brief, for appellant. Paul F. Ware, Jr., with whom John C. Englander, Jeremy ___________________ __________________ ______ Sternberg, and Goodwin, Procter & Hoar, Earle C. Cooley, and _________ ________________________ ________________ Cooley, Manion, Moore & Jones were on brief, for defendants, ________________________________ appellees. ____________________ February 19, 1993 ____________________ ____________________ *of the District Court of Puerto Rico, sitting by designation. BOWNES, Senior Circuit Judge. The government appeals ____________________ the dismissal of an Information which charged the defendants, Barker Steel Co., Inc. and Robert B. Brack, with engaging in a conspiracy to defraud the United States in violation of 18 U.S.C. 371. The Information alleged that the defendants fraudulently obtained Minority Business Enterprise and Disadvantaged Business Enterprise (MBE) "set aside" contracts. The district court found that the Information was insufficient to sustain the charges and dismissed it.1 For the reasons that follow, we reverse and remand for trial. I. I. Standard of Review Standard of Review __________________ On appeal from the dismissal of an information, we take the factual allegations in the information as true, and we must reverse the dismissal if we find that, as a matter of law, the information sufficiently sets forth the elements of the offense charged. United States v. Torkington, 812 F.2d _____________ __________ 1347, 1354 (11th Cir. 1987). We read an information as a whole and we construe the allegations in a practical sense, with all necessary implications.2 United States v. _______________ ____________________ 1 United States v. Barker Steel Co., Inc., 774 F. Supp. 65 _____________ ______________________ (D. Mass. 1991). 2 Prior to 1971, 18 U.S.C. 3731 limited government appeals from dismissed informations or indictments to issues of law. On appeal, the court was bound to accept the lower court's -2- nom., Zero v. United States, 459 U.S. 991 (1982); United ____ ____ _____________ ______ Cincotta, 689 F.2d 238, 242 (1st Cir.), cert. denied sub ________ _____ ______ ___ law, including the lower court's interpretation of a statute, (5th Cir.), cert. denied, 427 U.S. 903 (1978). Questions of _____ ______ States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 ______ ____________________________ are reviewed de novo. United States v. M.I.M., 932 F.2d __ ____ _____________ ______ construction by lower court). -3- States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990) ______ _________ and removed the restrictions on appeal. But see United ___ ___ ______ (following former rule and limiting review of allegations to An information should be "a plain, concise and An information is sufficient if it "first, contains the constituting the offense charged." Fed. R. Crim. P. 7(c)(1). elements of the offense charged and fairly informs a definite written statement of the essential facts second, enables him to plead an acquittal or conviction in defendant of the charge against which he must defend, and, 1016, 1019 (1st Cir. 1991). bar of future prosecutions for the same offense." Hamling v. _______ United States, 369 U.S. 749, 763-64 (1962); United States v. _____________ _____________ language of the statute as long as the core facts of the information is sufficient when allegations are made in the criminality charged are also included. Russell 369 U.S. at _______ Penagaricano-Soler, 911 F.2d 833, 839 (1st Cir. 1990). An __________________ ____________________ 764; Penagaricano-Soler, 911 F.2d at 839-40; United States v. __________________ ________________ United States, 418 U.S. 87, 117 (1974); accord Russell v. _____________ ______ _______ construction of allegations. Congress amended 3731 in 1971 Allard, 864 F.2d 248, 250 (1st Cir. 1989) ("The test for ______ sufficiency, therefore is not whether, in hindsight, the indictment or information could have been more complete, . . . but rather whether it fairly identifies and describes the offense." (citations omitted)). Therefore, we examine the Information as a whole to determine whether it sufficiently charges the offense proscribed by the conspiracy statute. II. II. The Information The Information _______________ To begin, we summarize the key allegations of the Information. The government's allegations concerning the defendants' conspiracy to defraud the United States focus on the MBE programs of several federal agencies, the U.S. Department of Transportation (DOT), the Environmental Protection Agency (EPA), and the General Services Administration (GSA). These federal agencies intended the MBE programs to "support[] the fullest possible participation of firms owned and controlled by certain racial minorities and women in the construction programs funded and assisted by these departments and agencies." Information at 6. To that end, the MBE programs required that recipients of funds from federal agencies establish goals or set aside a percentage of federal funds received for contracts to certified MBE businesses. Information at 7. -4- Federal agencies with MBE programs rely upon state and local governments to certify applicants as qualified minority businesses. Information at 9. To qualify for MBE certification, at least fifty-one percent of the ownership of the enterprise must be by certain minority groups, and the minority owners must also control the daily operations of the business. Information at 6. To implement the MBE program, the entity receiving federal agency funding hires general contractors to perform the work, who in turn award subcontracts to certified MBEs to meet the percentage goal for the project. For subcontract work to qualify for MBE goals or set aside contracts, the MBE certified firm must perform a "commercially useful function in the execution of the project by actually performing, managing and supervising the work involved." Information at 10. For materials and supplies to qualify, the MBE certified firm must "either produce the goods from raw materials or substantially alter the goods before reselling them." Information at 10. The Information alleges that from about October, 1982, until at least July, 1986, Barker Steel Company (Barker) and its president, director and majority stockholder, Robert B. Brack (Brack), conspired with others to use Rusco Steel Company (Rusco) as a front company to win MBE set aside contracts for Barker. Information at 13. Barker was a Massachusetts corporation which furnished -5- fabricated steel reinforcing bars (re-bars) and other products to the construction industry throughout New England. Barker was never a certified MBE. Information at 1, 11. Rusco, located in Rhode Island, had been certified as an MBE in several states before the scheme with the defendants began. Information at 3, 15. The steel re-bar industry includes two distinct functions: fabricators and erectors. Firms which operate as fabricators "cut and bend the re-bars to meet the specifications of a particular construction project and then deliver the re-bars to the construction site." Information at 5. The industry term for the work done by fabricators is "furnish" work. Id. Firms known as erectors "place the ___ fabricated re-bars within the forms, at the job site, prior to the pouring of the concrete." Information at 5. Erector firms do "erection" work. Id. ___ In October, 1982, Barker agreed with Rusco that Barker would finance a new division of Rusco for erecting steel re-bar, "erection" work. Information at 5, 16. In exchange, Rusco would allow Barker to market its steel products through Rusco for re-bar "furnish" contracts to take advantage of Rusco's MBE certification. Information at 13, 16. Prior to 1982, Rusco had operated as a broker of steel re-bar but had not fabricated re-bar or erected re-bar. Information at 15. Beginning in 1982, Barker employees -6- managed all aspects of the fabrication, sales and shipping of steel re-bar and other products in its own name and in Rusco's name when contracts required MBE certification. Information at 16, 19, 20. Barker employees and Brack exercised substantial control over Rusco throughout this period. Information at 22, 25. In 1985, the defendants merged a subsidiary company into Rusco, to deceive state MBE certifying agencies about Rusco's eligibility for MBE certification. Information at 25, 43. As part of the scheme, Rusco submitted documentation to various state and local agencies for the purpose of obtaining or maintaining certification as an MBE. Information at 32, 26, 41, 47. The documents submitted by Rusco contained false, misleading and fraudulent statements as well as material omissions. Id. The Information concludes ___ that as a result of the conspiracy, more than $5 million in federally funded and federally assisted construction contracts were improperly credited toward MBE goals when the contracts actually benefitted Barker, which was not an MBE firm. Information at 15. The conspiracy, according to the Information, impeded, impaired, obstructed and defeated the implementation, execution and administration of the MBE programs of DOT, EPA and GSA. Information at 12. III. III. Discussion Discussion __________ -7- The district court dismissed the Information on the grounds that: (1) it failed to allege a violation by the defendants of any MBE program statute; (2) it did not clearly state a violation by the defendants of a duty owed to the federal government, and (3) it failed to allege direct contact with federal agencies. The defendants contend that because the MBE program does not impose criminal penalties or any obligations upon them, they were not fairly warned that the conduct alleged in the Information could give rise to criminal charges. In further support of the dismissal of the Information, the defendants add that their alleged conduct was not fraud because it did not deprive the federal government of any money or property. The government counters that the Information properly and sufficiently alleged that the defendants conspired to defraud the federal government in violation of 18 U.S.C. 371. A. Legal Sufficiency of the Information A. Legal Sufficiency of the Information ____________________________________ The Information charges that the defendants conspired with others to defraud the United States in violation of 18 U.S.C. 371. The pertinent language of 371 provides as follows: If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy each shall be fined not -8- more than $10,000 or imprisoned not more than five years, or both. 18 U.S.C. 371. To sufficiently charge a conspiracy to defraud, the Information must allege the three essential elements of section 371: "an agreement, the unlawful objective of the agreement, and an overt act in furtherance of the agreement." United States v. Hurley, 957 F.2d 1, 4 ______________ ______ (1st Cir. 1992), cert. denied, 61 U.S.L.W. 3256 (U.S. Oct. 5, _____ ______ 1992). The objective of the agreement is unlawful if it is "'for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" Dennis v. _________ United States, 384 U.S. 855, 861 (1966); (quoting Haas v. _____________ ____ Henkel, 216 U.S. 462, 479 (1910)). ______ In this case, the government alleged the defendants' conspiracy to defraud in the language of the statute as follows: the defendants herein, BARKER STEEL CO., INC. and ROBERT B. BRACK, did knowingly, willfully and unlawfully combine, conspire, confederate and agree with others, known and unknown, to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental function of various departments and agencies of the United States, including particularly USDOT, EPA and GSA, in the implementation, execution and administration of their respective MBE programs. . . . (All in violation of Title 18 United States Code, Section 371.) -9- Information at 12, and final statement at page 13. The Information also includes detailed factual allegations to substantiate the cursory statutory allegations. The defendants conspired with Rusco and others to establish Rusco as a front company which the defendants used to obtain MBE set aside contracts for furnishing steel re-bar on construction projects funded in part by federal agencies. The defendant corporation, Barker, was not an MBE and was, therefore, not entitled to MBE contracts. Although Rusco may have been a properly certified MBE at one time, during the relevant period of the defendants' scheme, they financed and controlled Rusco, thereby destroying its eligibility as an MBE. Rusco maintained its MBE certification by supplying false and misleading documentation to certifying agencies. We continue our analysis of the sufficiency of the Information to determine whether 371 provided fair warning to the defendants that their conduct, as alleged, violated the statute. B. Sufficiency of the Allegations of Conspiracy B. Sufficiency of the Allegations of Conspiracy ____________________________________________ The defendants do not contend that the Information failed to allege a conspiracy, nor did the district court so find, and we find no deficiency. "The gist of conspiracy is an agreement to disobey or to disregard the law." United ______ States v. Drougas, 748 F.2d 8, 15 (1st Cir. 1984); accord ______ _______ ______ United States v. Batista-Polanco, 927 F.2d 14, 19 (1st Cir. _____________ _______________ -10- 1991); Penagaricano-Soler, 911 F.2d at 840. The Information __________________ alleges that the defendants conspired with others, known and unknown, to defraud the government and goes on to allege conduct by the defendants, their employees, Rusco, and others in furtherance of the conspiracy. Information at 12 and passim. ______ The defendants argue, however, that because Rusco was not named or charged as a co-conspirator in the Information, actions by Rusco cannot be alleged to support the charges against the defendants. There is no requirement that co- conspirators be identified in an information, nor is there a requirement that co-conspirators be charged with the same offense to sustain the conviction of one co-conspirator. Penagaricano-Soler, 911 F.2d at 840 n.5; United States v. __________________ ______________ Sachs, 801 F.2d 839, 845 (6th Cir. 1986). Although Rusco is _____ not charged or named as a co-conspirator, the Information alleges action which includes Rusco as a participant with the defendants in the scheme to defraud the MBE programs. Information at 13, 16. The reasonable inference from those allegations is that Rusco was operating as a co- conspirator. Further, the Bill of Particulars specifically identifies Rusco as a co-conspirator.3 It is well settled ____________________ 3 While a bill of particulars cannot cure a defective indictment, it can provide notice of detail missing from an information. See Fed. R. Crim. P. 7(e); 1 Charles A. ___ Wright, Federal Practice and Procedure Criminal 2d 129 (1982); United States v. Prince, 868 F.2d 1379, 1384 (5th _____________ ______ -11- that members of a conspiracy are legally responsible for the actions of a co-conspirator taken in furtherance of the scheme. Pinkerton v. United States, 328 U.S. 640, 646-47 _________ _____________ (1945); United States v. Baines, 812 F.2d 41, 42 (1st Cir. _____________ ______ 1987); United States v. Fusaro, 708 F.2d 17, 21 (1st Cir. _____________ ______ 1983). Therefore, actions by Rusco to obtain or maintain MBE certification are properly alleged as elements of the conspiracy. C. Sufficiency of the Allegations of Fraud C. Sufficiency of the Allegations of Fraud _______________________________________ The conspiracy statute proscribes two different conspiracies: one to commit a specific offense, the "offense clause," and the other to defraud the United States "in any manner or for any purpose," the "defraud clause." Hurley, ______ 957 F.2d at 3. The defendants were charged under the "defraud clause" of 371. At the start of our analysis, we acknowledge that the defraud clause of 371 has been criticized for its general language and potentially broad sweep. Dennis v. United ______ ______ States, 384 U.S. 855, 860 (1966). Further, because there are ______ no common law crimes against the United States, we must determine whether the defendants' alleged conduct is "'plainly and unmistakably' within the province of [ 371]." ____________________ Cir. 1989) (observing that an information, unlike an indictment, may be easily amended absent prejudice to defendants). -12- United States v. Gradwell, 243 U.S. 476, 485 (1917). We, _____________ ________ therefore, scrutinize the Information carefully to determine whether it sufficiently and properly alleges criminal conduct in violation of 371. The defendants contend that they lacked fair warning that the conduct alleged in the Information would violate the defraud clause of 371. The fair warning doctrine invokes due process rights under the Fifth Amendment and requires that the criminal statute at issue be sufficiently definite to notify persons of reasonable intelligence that their planned conduct is criminal. United States v. Harriss, 347 _____________ _______ U.S. 612, 617 (1953) ("The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute."); United ______ States v. National Dairy Corp., 372 U.S. 29, 31 (1963); ______ _____________________ United States v. Anzalone, 766 F.2d 676, 678 (1st Cir. 1985). _____________ ________ We examine the statute, as we must, in the context of the facts of this case. United States v. Mazurie, 419 U.S. 544, _____________ _______ 550 (1975); United States v. Angiulo, 897 F.2d 1169, 1179 _____________ _______ (1st Cir. 1990). The defendants assert that 371 did not provide fair warning that their alleged actions defrauded the MBE programs of federal government agencies because the MBE programs did not impose any duties on them. The district court found that -13- the MBE programs did not impose criminal sanctions or penalties, or any obligations on subcontractors, such as the defendants, and held that because the defendants had not violated any duty imposed upon them by the MBE programs, they could not have violated 371. The defendants primarily rely on United States v. Murphy, 809 F.2d 1427 (9th Cir. 1987); _____________ ______ United States v. Anzalone, 766 F.2d 676 (1st Cir. 1985), and ______________ ________ United States v. Porter, 591 F.2d 1048 (5th Cir. 1979). We ______________ ______ find them inapposite to this case. In United States v. Anzalone, 766 F.2d 676 (1st Cir. _____________ ________ 1985), we addressed the problem of criminal prosecution of an individual for alleged violations of the currency reporting requirements before the applicable statutes were amended to include such transactions. Anzalone did not involve 371.4 ________ The government claimed that the defendant failed to notify the bank that his deposits were part of the same event and should have been reported as a "structured" transaction. The essence of the government's charges was "that the appellant's failure to inform the Bank of the 'structured' nature of his transfers constituted an illegal scheme to avoid detection of these payments by causing the Bank to fail in its duty to report them." Id. at 679. We held that the defendant could ___ ____________________ 4 The defendant was not charged under 371 and 371 was not discussed in the case. The defendant was charged and convicted of violating 18 U.S.C. 2, 1001 and 31 U.S.C. 5313, 5322. -14- not be held criminally liable under the crimes charged for failing to report the transaction when the Reporting Act did not impose a duty on him to do so. Our analysis in Anzalone is easily ________ distinguishable from this case. In addition to the fact that Anzalone does not address 371, the defendant was charged ________ with a crime for failure to act. As we held in Anzalone, _______ ________ omission can only constitute a crime if the accused had a duty to act. In this case, however, the defendants are charged with defrauding the government by their actions, not by failure to act, and therefore, the analysis in Anzalone is ________ inapplicable. Similarly, in United States v. Murphy, 809 F.2d ______________ ______ 1427 (9th Cir. 1987), the defendants' alleged crimes arose from their failure to act. The defendants were charged with violating 371 because they failed to disclose the source of the funds they deposited which the government alleged constituted a conspiracy to impair the function of the Internal Revenue Service in the collection of taxes. The court found that the defendants had honestly and accurately completed the currency transactions reports which were required, had no duty to inform anyone of the source of the deposited money, and therefore had not committed any illegal activity. The court, in dicta, suggested that violations of 371 require violation of other criminal statutes. Id. at ___ -15- 1432. Moreover, the Ninth Circuit has explained and limited its decision in Murphy: ______ Dicta in Murphy can be construed to ______ require that a conspiracy charge under section 371 be based upon conduct that has "been proscribed by criminal statute." Id. Any such construction is __ incorrect in light of Dennis. We read ______ Murphy and Varbel [United States v. ______ ______ _______________ Varbel, 780 F.2d 758 (9th Cir. 1986)] ______ only to mean that a section 371 conviction may not be based upon a failure to volunteer information that is not required to be provided to the government, or upon the furnishing of correct information; such acts do not sufficiently impair the functioning of the government to support a criminal conviction. United States v. Tuohey, 867 F.2d 534, 538 (9th Cir. 1989). _____________ ______ In Tuohey, the court held that the government had properly ______ charged the defendants under 371 because the defendants had failed to report currency transactions as they were required to do by statute. In United States v. Porter, 591 F.2d 1048 (5th _____________ ______ Cir. 1979), the government charged a group of doctors and a laboratory operator with Medicare fraud and conspiracy to defraud the government under 371. On appeal, the court reversed the convictions and dismissed the indictments finding that the government had not properly charged or proved a conspiracy to defraud the government under 371. In summary, the government alleged that the doctor defendants had sent lab work to the laboratory operator defendant's -16- manual laboratories because they received a payment for doing so, rather than to automated laboratories which might have processed the work more quickly and more cheaply. Although the facts relating to the practice which provided payment back to the doctors are complex, the effect was obvious--the doctors sent their lab work to the laboratories which provided the payments and not to the automated laboratories. The charges to Medicare, however, were not increased by the practice and were within the guidelines for lab work in the area, and the quality of the work was not an issue. Further, the defendants did not violate any Medicare rules, regulations or other requirements by using manual laboratories. The government charged that the practice, nevertheless, violated 371 because it defrauded the government's "right to have the Medicare program conducted honestly and fairly." Id. at 1056. The government's ___ allegations established that the defendants failed to use the most cost effective laboratories, the automated laboratories, but did not show that the defendants were required to do so, and the allegations also showed that the defendants complied with the applicable rules and regulations of Medicare. The court found that the government did not prove that the defendants had interfered with lawful functions of the Medicare program as required for criminal liability under 371. -17- None of the cases relied upon by the defendants involve the situation before us: affirmative acts of misrepresentation and deceit to thwart the operation and purpose of a government program. Conspiracy to thwart the operation and purpose of a government program through deceit and trickery is prohibited by 371. Hammerschmidt v. United _____________ ______ States, 265 U.S. 182, 188 (1924); United States v. Bucey, 876 ______ _____________ _____ F.2d 1297, 1312-13 (7th Cir.), cert. denied, 493 U.S. 1004 _____ ______ (1989). As noted earlier, 371 proscribes two distinct types of conspiracies: (1) conspiracies to commit a specific offense against the United States, included elsewhere in the criminal code, and (2) conspiracies to defraud the United States. The essence of the defendants' theory is that if no other federal law or regulation proscribes alleged conduct, then the defendants cannot be held criminally responsible pursuant to 371 because they owe no duty to the federal government.5 The defendants' theory reflects a ____________________ 5 This theory is distinguishable from United States v. ______________ Minarik, 875 F.2d 1186 (6th Cir. 1989), where the defendants _______ were charged and convicted under the defraud clause of 371 although a specific provision of the Tax Code proscribed their conduct. In Minarik the court overturned the _______ convictions on the grounds that the case should have been brought under the offense clause of 371 to avoid confusion to the defendants concerning what conduct was considered illegal. -18- misunderstanding of the function of the two clauses of 371.6 If the second clause were interpreted to require commission of a specific offense, it would have the same meaning as the first clause thus rendering the second clause redundant. Whenever possible, we will not interpret a statute in such a way as to cause redundancy. Breest v. ______ Cunningham, 752 F.2d 8, 10 (1st Cir. 1985). __________ Recently we examined the defraud clause of 371 in the context of an appeal from conviction for conspiracy to impair the function of the IRS in United States v. Hurley, _____________ ______ 957 F.2d 1 (1st Cir. 1992), and held that the defraud clause does not depend on allegations of other offenses. In Hurley, ______ the defendants helped a drug smuggler hide and invest $5 million of his illegal earnings thereby thwarting the lawful function of the IRS to levy and collect income taxes. The defendants in Hurley argued that the indictment was invalid ______ for failing to charge them under the offense clause of 371 with specific tax code violations. The defendants also argued that because there were no laws prohibiting their particular money laundering activities, they had no duty to the government under 371 not to engage in money laundering. We found that the defendants had engaged in a long-standing ____________________ 6 The defendants' theory does not raise the due process problems presented in United States v. Haga, 821 F.2d 1036 _____________ ____ (5th Cir. 1987), where the defendants were charged under the offense clause of 371 but were convicted, apparently, under the defraud clause. -19- and complex conspiracy to deceive the IRS rather than a limited scheme proscribed by a single section of the tax code. We held that the defraud clause was properly charged because it can best address a conspiracy which encompasses a broad range of conduct for the unlawful purpose of impairing the function of the IRS. See also Dennis v. United States, ___ ____ ______ _____________ 384 U.S. at 860 (holding that the true nature of the crime was the entire conspiracy to falsely obtain benefits from the N.L.R.B., in violation of 371, and not merely the false statements made in furtherance of the conspiracy); United ______ States v. Bucey, 876 F.2d at 1312-13 (holding that actions ______ _____ which are themselves legal may constitute a criminal conspiracy in violation of 371 if they are part of a conspiracy to obstruct by deceit, craft or trickery the lawful function of a government agency). In the present case, the government alleges that the defendants concocted an elaborate scheme with Rusco to use Rusco as a front company to procure MBE set aside contracts for steel re-bar furnish work which would actually be done by the defendants. The scheme, as alleged, began in 1982 and continued into 1986. Although Rusco was indicted for the specific offense of filing false statements in violation of 18 U.S.C. 1001, the defendants' conspiracy aimed at a broader goal, impeding the purpose and function of the MBE programs. The defendants' scheme is the kind of complex -20- conspiracy which the defraud clause is intended to proscribe, and which might not be prosecuted adequately by addressing separate occurrences of illegal conduct.7 The defendants in Hurley fared no better with their ______ second argument. They argued that because their money laundering activities were not prohibited by specific statutes, they lacked fair warning that they could be prosecuted under the defraud clause of 371. We rejected their argument and held that if the "defendants knowingly participated in laundering drug proceeds, inevitably hindering the IRS in its ability to collect . . . taxes, their convictions under 371's defraud clause are unassailable." Id. at 4; accord United States v. Cambara, ___ ______ _____________ _______ 902 F.2d 144, 147 (1st Cir. 1990) ("The conspiracy statute does not require that unlawful means be used to achieve the unlawful goal of the conspiracy."). ____________________ 7 In Dennis, 384 U.S. 855, the defendants argued that they ______ should have been charged, if at all, under the offense clause of 371 for the substantive offense of making false statements but for the time bar of the statute of limitations. The Court held, however, that the charge of conspiracy to defraud the government properly stated the nature of the defendants' offense and was not "an attempt by prosecutorial sleight of hand to overcome a time bar." Id. ___ at 863. In this case, we also reject the defendants' claim that the government resorted to 371 to circumvent the statute of limitations barring a charge pursuant to 18 U.S.C. 1001. As in Dennis, while it is true that the defendants ______ may have violated 1001 in perpetration of the conspiracy, the gravamen of the charge is the scheme to defraud the MBE program and not merely the making of false statements. -21- Taken as a whole, the Information charges that the MBE re-bar "furnish" contracts obtained in Rusco's name were merely passing through Rusco, as a front, to Barker. The defendants used Rusco to win MBE contracts to "furnish" re- bar because the defendants could not have obtained those contracts directly. The result was that a non-MBE got the benefit of contracts which the MBE program intended for minority businesses. Both the defendants and the district court below rely on the fact that Rusco was a certified MBE during the existence of the conspiracy, implying that contracts which went to Rusco were proper under the affected MBE programs. A scheme to use a minority business as a front company was addressed in United States v. Anderson, 879 F.2d ______________ ________ 369 (8th Cir. 1989). The court found that the minority business certification requirements of the Small Business Administration were intended to insure that front companies did not usurp program benefits: To become certified for the [SBA minority business] program, a business must establish that it is socially or economically disadvantaged, is owned by a minority person and not a mere front for a non-[minority certified] business, is actually controlled by a minority person, and will be performing at least 15 percent of the government contract. Id. at 372. The Anderson defendants used a certified ___ ________ minority business as a front to obtain SBA set aside -22- contracts when the contract work was actually subcontracted to other, non-minority, businesses. Compare United States v. _______ _____________ Porter, 591 F.2d 1948 (5th Cir. 1979) (affirming dismissal of ______ an indictment which charged doctors and a laboratory worker with a kickback scheme to defraud Medicare in violation of 371 because there was no Medicare policy or regulation which prohibited doctors from taking such payments and Medicare costs were not increased). It is reasonable to infer that the MBE certification requirements for the agencies alleged in this case are intended to prevent non-MBEs from taking advantage of MBE set aside contracts.8 The MBE certification requirements impose duties upon the defendants and others not to subvert the system established to benefit minority businesses. Because Rusco did not do the re-bar "furnish" work specified in the contracts, Rusco was operating as a front for Barker which ____________________ 8 The Information summarized, rather than citing, the regulations which control the MBE programs of the DOT, EPA and GSA which provides sufficient understanding of the function of the programs. Nevertheless, the pertinent language of the regulation for MBE certification for the DOT is instructive: To ensure that this part benefits only MBEs which are owned and controlled in both form and substance by one or more minorities or women, DOT recipients shall use Schedules A and B . . . to certify firms who wish to participate as MBEs in DOT under this part. 49 C.F.R. 23.51. -23- did the "furnish" work and received the contract payments. As the government alleges, MBE contracts can only be awarded to MBEs who actually do the work, and therefore, the defendants' use of Rusco was a fraud on the MBE programs. Just because the defendants used Rusco, a certified MBE, to subvert the MBE requirements does not make their actions less reprehensible. The Information also alleges that Rusco fraudulently maintained its MBE certification after 1982. The defendants counter that the Information cannot properly charge them with defrauding the government based upon false documentation submitted by Rusco to various MBE certifying agencies because there is no allegation that the agencies relied upon the false documentation to certify Rusco. In Dennis, 384 U.S. ______ 855, the Supreme Court found that an indictment which charged members of a mine workers' union who submitted false affidavits, stating that they were not Communists, in order to procure the services of the National Labor Relations Board, properly stated a conspiracy to defraud the government pursuant to 371. The defendants objected that the affidavits did not defraud the Board because it did not rely on the veracity of the non-Communist affidavits, but instead relied only on the fact that they were filed. In response, the Court held as follows: The facts are, according to the indictment, that petitioners and their -24- co-conspirators could not have obtained the Board's services and facilities without filing non-Communist affidavits; that the affidavits were submitted as part of a scheme to induce the Board to act; that the Board acted in reliance upon the fact that affidavits were filed; and that these affidavits were false. Within the meaning of 371, this was a conspiracy to defraud the United States or an agency thereof. Dennis at 862. The effect of the conspiracy and the false ______ affidavits was that the defendants' trade union gained the benefit of the Board's services and facilities despite the fact that the union was not qualified because some of its officers were Communists. The Court held that the conspiracy defrauded the government by impeding the function of the Board to implement its policy to exclude unions with Communist officers. Similarly, in this case, Rusco could not have maintained its certification as an MBE without filing the required documentation. Because the defendants had taken control of Rusco, the documentation filed by Rusco contained false and misleading information and material omissions which directly affected Rusco's eligibility as an MBE. Unless Rusco maintained its MBE certification, the defendants' scheme to obtain MBE set aside contracts would have failed. The state and local MBE certification agencies granted MBE certification to Rusco in response to Rusco's fraudulent documentation. Therefore, Rusco's filings for MBE certification were at the core of the defendants' conspiracy -25- and may be considered as a part of the fraudulent activity in furtherance of the conspiracy. Even if Rusco had been a properly certified MBE, however, "[a] method that makes use of innocent individuals or businesses to reach and defraud the United States is not for that reason beyond the scope of 371." Tanner v. United States, 483 U.S. 107, 129 (1986). ______ _____________ This court has considered the meaning of the defraud clause in 371 and its substantially similar predecessors, and found actions which defrauded the United States in a variety of circumstances. Curley v. United States, 130 F. 1, ______ _____________ 11-12 (1st Cir. 1904), cert. denied, 195 U.S. 628 (affirming _____ ______ the sufficiency of an indictment charging conspiracy to defraud the government by a defendant who took a civil service exam for another man to help him gain a position as a letter carrier and defining defrauding the government as: "'any act committed with a view of evading the legislation of Congress passed in the execution of any of its powers, or of fraudulently securing the benefit of such legislation, may properly be made an offense against the United States.'"); Harney v. United States, 306 F.2d. 523 (1st Cir. 1962), cert. ______ _____________ _____ denied sub nom. O'Connell v. United States, 371 U.S. 911 ______ ___ ____ _________ _____________ (affirming indictment for hampering the lawful operation of the Bureau of Public Roads of the Department of Commerce in the administration of the Federal Aid Highway program); -26- United States v. Pappas, 611 F.2d 399 (1st Cir. 1979) ______________ ______ (affirming conviction of conspiracy to defraud government based on a scheme to misuse funds intended for the CETA program). Finally, dishonest conduct is at the heart of the crime of defrauding the government. The Supreme Court defined "defraud" in a substantially similar predecessor statute to 371 as follows: To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention. Hammerschmidt v. United States, 265 U.S. 182, 188 (1924). _____________ ______________ The defendants in Hammerschmidt were indicted for _____________ distributing leaflets and other materials urging resistance to the draft during World War I. The Court held that although the defendants' conduct was aimed at impairing the function of the Selective Service, a lawful government function, it was open defiance and not a scheme involving deceit or trickery, and therefore, could not be charged within the meaning of defrauding the government. -27- The allegations in this case do not present a situation where defendants conspired to do something which, in itself, was innocent, but which had the unintended effect of thwarting the MBE programs. Nor were the defendants engaging in open defiance or protest against the MBE programs. The defendants' actions, as alleged, involved deceit and trickery to benefit the defendants by hampering a lawful government function. A conspiracy of this kind has long been recognized to defraud the government. The Information alleges that "[p]ursuant to this unlawful conspiracy in excess of $5 million in federal and federally assisted construction contracts were improperly credited towards the MBE goals of the various departments and agencies of the United States."9 Information at 14. While this allegation could be more forcefully stated, taking the Information as a whole and with all necessary implications, the meaning is clear: the defendants conspired with others to defraud the DOT, EPA and GSA, agencies of the United States, in the implementation of their MBE programs by using Rusco to win MBE set aside contracts which the defendants would not otherwise have been eligible to receive. ____________________ 9 The defendants do not challenge the validity of the MBE program. It is uncontroverted, in this case, that the MBE program is a lawful function of government. And see ___ ___ Fullilove v. Klutznick, 448 U.S. 448 (1980) (upholding _________ _________ constitutionality of an MBE program). -28- As a result, the scheme diverted $5 million in contracts from MBEs to Barker. In thirteen pages containing forty-eight paragraphs, the Information details actions by which the defendants, Rusco and others accomplished their objective to obtain MBE contracts for the benefit of the defendants. The allegations show that the defendants were well aware of the purpose of the MBE programs, certification requirements, goals and set aside contracts, and that any reasonably intelligent person in the defendants' situation should have known that their conspiracy could have criminal consequences. Taken as a whole, the Information sufficiently alleges fraudulent conduct by the defendants and their co-conspirators to impair, defeat, or obstruct the function of the MBE programs involved in this case. We move on to consider whether the fraud was perpetrated against the United States. D. Sufficiency of Allegations of Contact with United States D. Sufficiency of Allegations of Contact with United States ________________________________________________________ The defendants assert, and the district court held, that the Information fails to allege that the defendants conspired to defraud the United States or an agency of the United States. In Tanner v. United States, 483 U.S. 107 ______ ______________ (1987), the Supreme Court considered whether a kickback conspiracy to procure and keep a construction contract on a project which was funded by federally guaranteed loans constituted defrauding the United States within the meaning -29- of 371. In Tanner, 483 U.S. 107, the Rural Electrification ______ Administration (REA) guaranteed loans for the construction of a power plant for an electric cooperative (Seminole) in Florida. The procurement manager for Seminole conspired with his friend to get contracts for the project with kickback payments to the manager. The defendants argued on appeal that the evidence at trial showed that the target of the conspiracy was Seminole and not the federal government. The government responded that, because Seminole's construction project received federal financial assistance and some federal supervision, a conspiracy to defraud Seminole was the same as a conspiracy to defraud the government. The Court rejected the government's explanation and held: The conspiracies criminalized by 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy, but also and most importantly by the target of the ______ conspiracy. Tanner at 130. The Court also held, however, that ______ conspiracies to defraud the federal government may be accomplished through intermediaries, innocent third parties, and the Court remanded the case to determine whether the defendants conspired to cause Seminole to make misrepresentations to the REA. Tanner at 132. ______ -30- In this case, the government alleged that the MBE programs of the involved federal agencies were the target of the defendants' conspiracy to defraud. Information at 12. The Information supports the general allegation in statutory language with detail of the workings of the MBE programs and the actions by the defendants which harmed the MBE programs. The Information alleges that the defendants' scheme caused "in excess of $5 million in federal and federally assisted construction contracts [to be] improperly credited towards the MBE goals of the various departments and agencies of the United States." Because the purpose of the MBE programs, as alleged, is to insure that at least ten percent of federal and federally assisted construction project contracts be awarded to MBE companies, the defendants' scheme to divert MBE contracts through Rusco to benefit themselves obstructed the proper function of the MBE programs. The Information taken as a whole clearly alleges that the target of the defendants' conspiracy was $5 million worth of MBE set aside contracts which should have been awarded to minority businesses. The Information does not allege that either the general contractors or the state agencies implementing MBE certification were operating as federal agencies based on their receipt of federal and federally assisted funds. The misrepresentations and fraud to general contractors and MBE -31- certifying agencies by the defendants and co-conspirators were the means to the end, using innocent third parties to effect their scheme. The Information sufficiently alleges a conspiracy which targeted a federal function, the MBE programs of the DOT, EPA and GSA, and therefore, properly charges a conspiracy to defraud the United States. E. Sufficiency of Allegations of Harm to the United States E. Sufficiency of Allegations of Harm to the United States _______________________________________________________ The defendants argue that the Information fails to allege a crime under 371 because it does not allege that the defendants defrauded the federal government of money or property. There is no basis for the defendants' argument. The language of the statute itself is broad: "If two or more persons conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose. . ." 18 _______________________________ U.S.C. 371 (emphasis added). At least since Haas v. ____ Henkel, 216 U.S. 462 (1910), the Supreme Court has recognized ______ that 371 (and its substantially similar predecessors) were not limited to conspiracies which defraud the government of money or property: "The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." Id. at 479. ___ Although the Supreme Court has limited the scope of mail fraud, 18 U.S.C. 1341, to the protection of property -32- rights, that limitation is restricted to the mail fraud statute. McNally v. United States, 483 U.S. 350, 360 (1987); _______ _____________ and id. at 368 (Stevens, J., dissenting); United States v. ___ ___ ______________ Smith, 891 F.2d 703, 713 (9th Cir. 1989), modified on other _____ ________ __ _____ grounds, 906 F.2d 385, cert. denied 111 S.Ct 47 (1990) _______ _____ ______ (McNally's narrow definition of "defraud" does not extend to _________ 371.). We decline to extend the McNally limitation to _______ 371. IV. IV. Conclusion Conclusion __________ We hold that the Information sufficiently alleges a conspiracy to defraud the government pursuant to 371 in the language of the statute and with sufficient supporting detail to adequately notify the defendants of the charges against them. The history of interpretation of 371 demonstrates that the statute proscribes conspiracies, such as the defendants' conspiracy, which target federal programs and which intend to deceitfully secure the benefit of those programs. In other words, the defendants had a duty imposed pursuant to 371 not to divert the benefit of the MBE programs from their intended recipients, qualified and certified minority businesses, to themselves. The statute itself provides fair warning that the defendants' alleged conspiracy may be charged as criminal under 371. -33- Therefore, we reverse the decision of the lower court and remand for trial. -34-