USA v. Bryant                      CR-93-31-B    10/29/93

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

    v.   _____     Criminal No. 93-31-01 & 03-B

James L. Bryant, Herbert Chihlun
Wang, and Bohai Trading Company,
Inc. a/k/a/ Brayco International
Corporation


**O R D E R**

James Bryant, Bohai Trading Company, Inc. ("Bohai"), and
Herbert Chihlun Wang ("Wang"), have been charged in a five count
indictment with trafficking in counterfeit goods (18 U.S.C.
§ 2320), conspiracy to traffic in counterfeit goods (18 U.S.C.
§ 371), importation of goods by means of false or fraudulent
practices (18 U.S.C. § 542), conspiracy to import goods by means
of false or fraudulent practices (18 U.S.C. § 371), and engaging
in a monetary transaction in property derived from unlawful
activity (18 U.S.C. § 1957).  Bryant and Bohai have moved to
dismiss the indictment on the grounds that: (i) two of the five
counts are based on a statute that did not give them
constitutionally adequate notice that their conduct was criminal;
(ii) all five counts fail to allege criminal conduct; and (iii)
the government violated defendants' equal protection rights by
impermissibly selecting this case for prosecution.  For the

reasons that follow, I reject these arguments and deny the motion to dismiss.

## **FACTS**[1]

Beginning in August 1989, Bryant, Wang, various Bohai employees, and other unnamed parties knowingly and intentionally engaged in a conspiracy to manufacture and sell women's sneakers bearing a counterfeit "KEDS" trademark. The conspirators had the sneakers manufactured at a factory in the People's Republic of China and then shipped to the United States where they were sold to a national department store chain. A number of steps were taken by the conspirators to conceal the fact that counterfeit trademarks had been applied to the sneakers without the knowledge or permission of the trademark owner:[2] false dates of manufacture were applied to the sneakers; documents were backdated; and an

---

[1]In considering a motion to dismiss challenging the sufficiency of an indictment, I accept the truth of the indictment's factual allegations. United States v. National Dairy Products Corp., 372 U.S. 29, 33 n.2 (1963); United States v. Barker Steel Co., 985 F.2d 1123, 1125 (1st Cir. 1993).

[2]Although it is not alleged in the indictment, the government concedes that the defendants were at one time authorized to apply the KEDS trademark to other sneakers manufactured at a factory in the Peoples Republic of China. However, the government contends that this authority was terminated prior to the time that the goods in question were manufactured.

2

invoice was fraudulently obtained from the trademark owner. Defendants then used this invoice and knowingly and intentionally made other false statements to make it appear to the United States Customs Service and to the buyer of the sneakers that the trademark owner had authorized the trademarks to be applied to the sneakers. Eventually, proceeds from the sale of the sneakers were knowingly and intentionally deposited in a financial institution.

## DISCUSSION

### I.   Vagueness

The Fifth Amendment guarantee of due process requires that criminal statutes be sufficiently definite to notify persons of reasonable intelligence that their planned conduct is criminal. Barker Steel Co., 985 F.2d at 1129; United States v. Anzalone, 766 F.2d 676, 678 (1st Cir. 1985). In cases such as the present, where First Amendment freedoms are not implicated, an allegation that a criminal statute is unconstitutionally vague must be evaluated "in light of the facts of the case at hand." United States v. Buckalew, 859 F.2d 1052, 1054 (1st Cir. 1988) (quoting United States v. Powell, 423 U.S. 87, 92 (1975) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975))). Thus, in

3

evaluating defendants' vagueness argument, I must determine whether a person of ordinary intelligence would understand from a reading of the statute at issue that the conduct described in the indictment is a crime.

The statute challenged by defendants, 18 U.S.C. § 2320 ("§ 2320"), provides that "whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services . . . ." commits a crime. The statute defines the term "counterfeit mark" to include:

(A) a spurious mark -

(i) that is used in connection with trafficking in goods or services;

(ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and

(iii) the use of which is likely to cause confusion, to cause mistake, or to deceive

. . . .

18 U.S.C. §2320(d). An exception exists under the statute for

"any mark or designation used in connection with goods or services of which the manufacturer or producer was, at the time of the manufacture or production in question authorized to use the mark for designation for the type of goods or services so manufactured or

4

produced, by the holder of the right to use such mark or designation."

Id.

In their fair notice challenge to § 2320, defendants focus on the statute's exception and argue that it is unconstitutionally vague when read in light of a regulation followed by the United States Customs Service at the time the defendants allegedly violated § 2320. At that time, 19 C.F.R. § 133.21(c)(3) ("regulation (c)(3)") specified that if "the articles of foreign manufacture bear a recorded trademark or tradename applied under authorization of the United States owner," the Customs Service would not prevent importation of the goods. Defendants contend that they did not receive fair notice that their conduct was criminal because this regulation authorized the very conduct that the government has attempted to criminalize in the indictment.

Unfortunately for defendants, the central premise underlying this argument is flawed. Regulation(c)(3) applied only to goods that bore a trademark applied "under authorization" of its owner. In the present case, the government has alleged that defendants' violation of § 2320 by applying the KEDS trademark to the goods in question was without the owner's authorization. Thus, the government's theory of liability as charged in the

5

indictment is not inconsistent with regulation (c)(3) because the conduct described in the indictment would have violated both the regulation and § 2320. Accordingly, this case presents no danger that a reasonably intelligent person would mistakenly conclude that the conduct charged in the indictment was not a violation of § 2320 because it was authorized by Customs Service regulations.

Defendants also cite to the legislative history of § 2320 for the proposition that Congress did not intend to criminalize a manufacturer's effort to import overruns of trademarked goods. See, e.g., Joint Statement on Trademark Counterfeiting Legislation, U.S. Cong. Rec. 31673, 31676 (House, October 10, 1984). Defendants apparently rely on this legislative history to argue that § 2320 would be impermissibly vague if it could be used contrary to its legislative history to criminalize the importation of overrun goods. In making this argument, however, defendants overlook other portions of the same legislative history that specify that the criminal sanctions contained in the trademark counterfeiting laws were intended to apply in any case where the goods in question were manufactured after the termination of the relationship between the trademark owner and the manufacturer. Id. ("[T]he compromise bill does not create a grace period for persons dealing with former licensees -- that is

6

licensees whose right to manufacture goods bearing a partial mark has been terminated at the time of manufacture"). In this case, the indictment charges that the defendants were not authorized to use the KEDS trademark on the sneakers at issue. If the evidence produced at trial establishes that the sneakers were overruns that were manufactured at a time when the defendants were authorized to use the KEDS trademark, defendants will be acquitted of the § 2320 violation. However, a statute is not impermissibly vague merely because the defendants may have a defense to the charged conduct which they intend to raise at trial.

Defendants have confused the real issue here by basing their fair notice challenge on their interpretation of other regulations and the legislative history of § 2320. The language of the statute clearly defines the type of conduct that is subject to punishment, and the charged conduct plainly falls within that definition. Defendants therefore cannot rely on § 2320's legislative history and on agency interpretations of other regulations -- both extrinsic sources -- to create an ambiguity of constitutional proportions. This is especially true where, as here, these sources are consistent with the theory of liability set forth in the indictment.

II.  Sufficiency of the Indictment

Defendants argue that the indictment is defective because each count fails to allege that a crime occurred.  In assessing this argument, I  employ the following standard of review:

> "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

United States v. McDonough, 959 F.2d 1137, 1140 (1st Cir. 1992) (citations omitted).  Applying this standard in the present case, I conclude that each count sufficiently alleges the commission of a crime.

A.  Failure to Allege "Core Fact of Criminality"

Defendants argue that the indictment fails to allege a § 2320 violation because, when the indictment is read in its entirety, it implies that the conduct at issue falls within the "authorized use" exception discussed above.  Defendants further contend that because all of the other counts depend upon the alleged § 2320 violation, the entire indictment must be dismissed because of this alleged deficiency.  I reject this argument because it is based upon a fundamental mischaracterization of the authorized use exception.  A defendant may not rely on the exception by claiming that he was authorized to use a trademark

8

at some point before the goods in question were manufactured. Rather, the exception can only be claimed if the manufacturer was authorized to apply the mark to goods of that type "at the time of the manufacture or production in question." In the present case, the government alleges that the trademarks on the sneakers were counterfeit and that defendants were not authorized to apply the mark to the goods in question. This allegation is sufficient to satisfy this element of the offense and it by no means implies that the defendants were authorized to apply the mark to the goods of that type at the time that the sneakers in question were manufactured or produced. Defendants are free to avail themselves of any available defense at trial. However, they may not obtain a dismissal of the indictment simply by alleging that they have a defense.

B. <u>Materiality of the False Statements</u>

Defendants also contend that Counts III and IV are defective because the false statements alleged in Count III are not material. In the present case, the indictment identifies the alleged misstatements and further alleges that the misstatements were material. Whether the government will be able to establish the materiality of the statements to my satisfaction is a matter that must be left for trial. All that I determine now is that

9

the indictment is sufficient to allow the government to attempt to prove its case at trial.

III. Selective Prosecution

In order to establish a selective prosecution claim, a defendant must present evidence:

> (1) [T]hat, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion or the desire to prevent his exercise of constitutional rights. . . ."

United States v. Union Nacional de Trabajadores, 576 F.2d 388, 395 (1st Cir. 1978) (quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974); see also United States v. Saade, 652 F.2d 1126, 1135 (1st Cir. 1981). The Defendants in the present case are unable to satisfy either part of this test.

Defendants attempt to satisfy the first part of the test by claiming that no one in their position has ever been prosecuted for a violation of § 2320. However, the first element of a selective prosecution claim cannot be established merely by alleging that no similar prosecutions previously have been brought. Instead, a defendant must produce evidence that the

10

government has declined to prosecute others who were in a situation similar to the defendants. Since they have failed to produce any evidence that the government has declined to prosecute other similarly situated parties, the defendants have not met the first part of the test.

Defendants attempt to establish the second element of their selective prosecution claim by arguing that the investigation leading to the indictment was instigated by the owner of the KEDS trademark and that the government has been used improperly to protect the economic interests of the trademark owner. The mere fact that a victim of a criminal conduct may have an economic interest in the prosecution of a particular defendant does not render the government's independent decision to prosecute the defendant improper. The defendants have not alleged that any improper influence has been brought to bear on the government to induce it to prosecute the defendants. Accordingly, the defendants have also failed to establish the second element of a selective prosecution claim. Since defendants allege nothing else in support of their selective prosecution claim, the claim must necessarily fail.

11

## **CONCLUSION**

Defendants' Motion to Dismiss (document #23) is denied.


SO ORDERED.


_____
Paul Barbadoro
United States District Judge

October 29, 1993

cc:   Steven J. Brooks, Esq.
      United States Attorney
      United States Marshal
      United States Probation