**FLORSHEIM SHOE CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 95–25.
Court No. 94–10–00613.

United States Court of
International Trade.

Feb. 16, 1995.

Sonnenberg & Anderson (Steven P. Sonnenberg, Jerry P. Wiskin, and Michelle D. Mancias), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Sha-lom Brilliant), Michael Young, U.S. Dept. of the Interior, of counsel, for defendant.

## OPINION

DiCARLO, Chief Judge:

Plaintiff, Florsheim Shoe Company, challenges the United States Fish and Wildlife Service's denial of entry of elk skin shoes imported by Florsheim from Taiwan. The basis for the denial was a Presidential prohibition, issued pursuant to 22 U.S.C. § 1978 (Supp. V 1993), the Pelly Amendment to the Fisherman's Protective Act of 1967. Florsheim contends the shoes fall outside of the prohibition. Pursuant to USCIT R. 56, Florsheim, and defendant United States, bring cross-motions for summary judgment. The court has jurisdiction under 28 U.S.C. § 1581(i)(3) (Supp. V 1993).

## BACKGROUND

On September 7, 1993, the Secretary of the Interior certified Taiwan under 22 U.S.C. § 1978, the Pelly Amendment to the Fisherman's Protective Act of 1967, as a country whose activities were diminishing the effectiveness of international conservation measures. The Pelly Amendment permits restriction of imports of any product from countries which violate international fishery or endangered or threatened species programs. The basis for Taiwan's certification was its trade in rhinoceros and tiger parts and products, in contravention of the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES). Taiwan has no native populations of rhinoceroses and tigers.

Within 60 days of the date of certification, the President may prohibit the importation of any products from the offending country, upon notice to Congress. *See* 22 U.S.C. § 1978(b). On November 8, 1993, the President reported to Congress on the proposed embargo and granted Taiwan until March 1994 to demonstrate its commitment to the elimination of the illegal trade in rhinoceros and tiger parts.

On February 24, 1994, the Fish and Wildlife Service published a notice in the Federal

Register announcing the receipt of a petition to certify Taiwan under the Pelly Amendment and to expand the scope of the current certification. *Pelly Amendment to the Fisherman's Protective Act; Request for Certification of the People's Republic of China and Taiwan; Conservation of Endangered Species Subject to Illegal International Trade,* 59 Fed.Reg. 8998 (Fish & Wildlife Serv.1994)

Two weeks later, the President wrote to the Speaker of the House of Representatives to inform Congress of the President's decision to enforce the embargo against "wildlife specimens, parts and products thereof, that are products of Taiwan." (Def.'s Mem., Ex. 3, Ltr. from Pres. to Spkr. of House, Apr. 11, 1994) (hereinafter "Pres.Cert."). The Office of the United States Trade Representative subsequently published a notice and request for comment in the Federal Register, announcing the Presidential decision to prohibit the importation of " 'wildlife specimens and parts and products' of Taiwan." *Proposed Import Prohibition on Wildlife Specimens and Products of Taiwan Pursuant to the Pelly Amendment; Request for Public Comment,* 59 Fed.Reg. 22,043, 22,045 (Off.Trade Rep.1994).

The President issued a memorandum to the Secretary of the Treasury on August 2, 1994, directing the prohibition of "the importation of fish or wildlife, as defined in 16 U.S.C. 3371 and 50 CFR 10.12, and their parts and products, of Taiwan to which, but for these prohibitions, the import declaration requirements in 50 CFR 14.61 would apply." *Imposition of Prohibitions Pursuant to Section 8(a)(4) of the Fishermen's Protective Act of 1967, as Amended,* 59 Fed.Reg. 40,463 (Pres.Mem.1994) (hereinafter "Proclamation").

The Fish and Wildlife Service seized elk skin shoes manufactured in Taiwan from imported Finnish elk leather on October 12, 1994, as articles barred under the Proclamation. Florsheim now challenges the scope of the embargo as interpreted by the Fish and Wildlife Service.

## DISCUSSION

Florsheim does not contest that the seized shoes are wildlife products, (Pl.'s Stmt. of Mat. Facts Not in Issue ¶ 14; Pl.'s Br. at 19), or that the shoes are products of Taiwan, (*Id.* ¶ 6), nor does the Fish and Wildlife Service contest that the elk leather used in the shoes is taken from Finnish elk. The issue in dispute, therefore, is a question of law: what is the scope of the Proclamation. There are no genuine issues of material fact. The court reviews the agency's decision *de novo. See Bar Bea Truck Leasing Co. v. United States,* 4 CIT 159, 160–61, 1982 WL 2239 (1982) (noting trial *de novo* permissible where no formal hearing or right to participate in investigation in meaningful manner is afforded). The court finds the Fish and Wildlife Service properly interpreted the scope of the Proclamation as extending to the elk skin shoes.

### 1. Analysis of the Presidential Proclamation.

■ Florsheim contends that the embargo does not cover products made in Taiwan from fish or wildlife components, unless the fish and wildlife itself was taken from the wild in Taiwan. According to Florsheim, analysis of the punctuation and grammatical construction of the Proclamation's primary mandate "to prohibit the importation of fish or wildlife, as defined in 16 U.S.C. 3371 and 50 CFR 10.12, and their parts and products, of Taiwan" restricts the scope of the embargo.

Florsheim argues that "of Taiwan" is intended to modify "wildlife" because the intervening phrase "and their parts and products" is adjectival. (Pl.'s Br. at 20.) Florsheim contends that the pronoun "their" is a substitute for "wildlife of Taiwan," and that the scope of the embargo in the Proclamation therefore extends only to products made from wildlife native to Taiwan. *Id.*

■ In construing a Presidential proclamation the same rules of construction must be applied as in the construction of statutes. *De Kay v. United States,* 280 F. 465, 472 (1st Cir.), *cert. denied,* 260 U.S. 738, 43 S.Ct. 94, 67 L.Ed. 489 (1922); *see also China Diesel Imports, Inc. v. United States,* 18 CIT ——, ——, 870 F.Supp. 347, 351 (1994). Thus, the starting point in any case involving the mean-

ing of a proclamation is the language of the proclamation itself. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Florsheim's construction of the Proclamation slights the existence of the initial phrase, "as defined in 16 U.S.C. 3371 and 50 CFR 10.12," placed between "wildlife" and "and their parts and products." This phrase, set off by commas, modifies "wildlife;" the following phrase, "and their parts and products," is not set off from "wildlife." This latter phrase does not modify "wildlife," but rather adds to it.

Further, the comma after the phrase "and their parts and products," would indicate that "of Taiwan" modifies the entire phrase, "wildlife ... and their parts and products." *See Elliot Coal Mining Co. v. Director, Off. of Workers' Comp. Pgms.,* 17 F.3d 616, 629 (3d Cir.1994) (noting "use of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to all of the previous phrases.") The embargo thus applies to all wildlife *products* from Taiwan, whether or not the wildlife used to make the product was taken from the wild in Taiwan.

Determining the scope of the Proclamation based solely on its punctuation does not override the even more fundamental principal of construction that the Proclamation must be read in its entirety. *See Crawford v. Burke,* 195 U.S. 176, 192, 25 S.Ct. 9, 12, 49 L.Ed. 147 (1904); *see also Pennsylvania Medical Soc'y v. Snider,* 29 F.3d 886, 895 (3d Cir.1994) (noting court must look to provisions of whole law). As the Supreme Court has recently noted, "[n]o more than isolated words or sentences is punctuation alone a reliable guide for discovery of a [proclamation's] meaning." *United States Nat'l Bank of Oregon v. Independent Ins. Agents, Inc.,* ── U.S. ──, ──, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993); *see also Hol–Gar Mfg. Corp. v. United States,* 351 F.2d 972, 976, 169 Ct.Cl. 384 (1965) (noting punctuation is resorted to when all other means fail.)

## 2. Incorporation of the Lacy Act Definitions.

Florsheim finds further support for its contentions in the Proclamation's incorporation by reference of the definition of "wildlife" in 16 U.S.C. § 3371 (1988), and 50 C.F.R. § 10.12 (1993).[1] Florsheim argues that, once this definition is incorporated into the Proclamation, analysis of the rewritten mandate compels the conclusion that a wildlife "product" must be derived from a "wild animal" and that such animal must be "of Taiwan."

This conclusion is premised on the definition contained in 16 U.S.C. § 3371, which provides that "wildlife" includes "any part, product ... thereof." According to Florsheim, the phrase "of Taiwan" clearly modifies the word "wildlife;" therefore, as the definition of "wildlife" includes "any part, product," such products must be derived from a wild animal from Taiwan. Florsheim contends as the shoes are made of elk skin from Finland, they would fall outside the embargo's boundaries.

Florsheim's interpretation of the Proclamation contravenes "the elementary canon[s] of [statutory] construction that a statute should be interpreted so as not to render one part inoperative," *Department of Revenue v. ACF Indus., Inc.,* ── U.S. ──, ──, 114 S.Ct. 843, 848, 127 L.Ed.2d 165 (1994) (citation omitted), and not to cause a redundancy, *United States v. Barker Steel Co.,* 985 F.2d 1123, 1131 (1st Cir.1993).

If the court were to accept Florsheim's contentions that "wildlife of Taiwan" includes parts and products of wild animals taken from Taiwan, the following phrase in the Proclamation, "and their parts and products," would be rendered inoperative. The court refuses to interpret the provision in such manner. Adherence to the principles of construction prescribes that the phrase, "and their parts and products," may include prod-

---

1. Section 3371(a), title 16, United States Code, defines "wildlife" as:
   any wild animal, whether alive or dead, including without limitation any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean,

arthropod, coelenterate, or other invetebrate [sic], whether or not bred, hatched, or born in captivity, and including any part, product, egg, or offspring thereof.
16 U.S.C. § 3371(a); *see also* 50 C.F.R. § 10.12.

ucts of Taiwan made from wild animals originating elsewhere.

### 3. Import Declaration Requirements.

Florsheim also contends that the Proclamation's reference to import declaration requirements in 50 C.F.R. § 14.61 requires application of the definition of "country of origin" from 50 C.F.R. § 10.12 to the Proclamation. Florsheim observes that the President's embargo applies to fish and wildlife products "to which, but for these prohibitions, the import declaration requirements in 50 CFR 14.61 would apply."

Section 14.61, title 50, Code of Federal Regulations, requires that a Form 3–177 be filed with the Fish and Wildlife Service when clearance is requested. For purposes of Form 3–177, "country of origin" constitutes "the country where the animal was taken from the wild, or the country of natal origin of the animal." 50 C.F.R. § 10.12. Florsheim contends this definition would govern the interpretation of the Proclamation, thereby limiting the embargo to products produced from wildlife native to Taiwan.

These arguments lack merit. The Proclamation defines its scope, subject to its other provisions, to products for which an importer would normally have to file a Form 3–177 under 50 C.F.R. § 14.61. An importer is required to file an import declaration for "*all* wildlife imported into the United States." 50 C.F.R. §§ 14.52, 14.61 (1993) (emphasis added).

The only exceptions to the import declaration requirements are provided in 50 C.F.R. § 14.62 (1993): (a) shellfish or fishery products imported for consumption; (b) fish taken for recreational purposes in Canada or Mexico, or game from those countries for which a Customs Form 3315 has been filed; and (c) certain wildlife products not intended for sale. The elk skin shoes clearly fall outside of these exceptions. In fact, Florsheim notes, "[t]here is no question that the importation of elk leather shoes requires the importer to complete and present a Form 3–177 at the time of importation into the United States." (Pl.'s Mem. for Summ. J. at 21–22) (footnote omitted). Given this concession, the shoes constitute fish and wildlife

products "to which, but for these prohibitions, the import declaration requirements in 50 C.F.R. § 14.61 would apply."

### 4. Design and Purpose of the Proclamation.

■ The court is required to construe statutes in light of their intended purpose, *Wassenaar v. Office of Personnel Management*, 21 F.3d 1090, 1096 (Fed.Cir.1994), namely to avert the mischief Congress has revealed, *Platt v. Union Pac. R.R.*, 99 U.S. 48, 55, 25 L.Ed. 424 (1878). The duty of the court is to find the interpretation imbedded in the statute and thus harmonious with [the drafter's] manifest scheme and purpose. *Spencer v. Brown*, 17 F.3d 368, 373 (Fed. Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994). In discharging this duty, the court not only looks to the statutory language, "but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990).

The purpose of the Pelly Amendment and the Proclamation in particular, is to prevent *trade* in endangered species, whether or not those species originated in the home country. (*See* Ltr. from Sec. of Interior to Pres., Sept. 7, 1993, at 1.) Congress recognized this need when it expanded the President's discretionary powers under the Pelly Amendment from the ability to merely prohibit products made of wildlife taken from the offending country, to the capacity to "levy import sanctions on *any* product" from the offending state. *High Seas Driftnet Fisheries Enforcement Act*, H.R.Rep. 102–262(I), 102d Cong., 2d Sess. 11, *reprinted in* 1992 U.S.C.C.A.N. 4090, 4097–98 (emphasis added).

The public notice of April 28, 1994 reveals the President's intention to prohibit all wildlife products of Taiwan, whether or not the wildlife in those products were native to or had originated from Taiwan. The notice provides that "[t]he products eligible for the import prohibitions ... cover wildlife specimens, parts and products thereof, that are *products* of Taiwan." *Proposed Import Prohibitions*, 59 Fed.Reg. at 22,044 (emphasis added). This is reaffirmed in the notice

through reference to the Fish and Wildlife Service's records indicating trade in wildlife products to be covered under the Proclamation totaled $22 million in 1992. *Id.* at 22,-045. Of this amount, $17 million represented imports of products containing wildlife that did not originate in Taiwan. (Def.'s Stmt. of Mat. Facts ¶ 7; Pl.'s Resp. to Def.'s Stmt. of Mat. Facts ¶ 1.)

Florsheim's proffered interpretation would precisely excise the very mischief the President sought to avert—to preclude Taiwan's trade in rhinoceros and tiger parts and products. (Pres.Cert. at 1.) Taiwan has no native populations of rhinoceroses or tigers. (Def.'s Stmt. of Mat.Facts ¶ 2; Pl.'s Resp. to Def.'s Stmt. of Mat.Facts ¶ 1.) If Florsheim's interpretation was accepted, the embargo would not apply to trade in these endangered species, although this is the Proclamation's very purpose. The court finds this reading of the Proclamation unacceptable.

### CONCLUSION

The court finds the language, design, and history of the Proclamation unmistakably define the scope of the Proclamation as encompassing products of Taiwan containing wildlife originating from other countries. For the foregoing reasons, defendant's motion for summary judgment is granted.

### JUDGMENT ORDER

This action having been submitted for decision, and upon due deliberation, it is hereby

ORDERED that plaintiff's motion for summary judgment is denied; and it is further

ORDERED that defendant's motion for summary judgment is granted, and that denial of entry of elk skin shoes imported by plaintiff from Taiwan was proper; and it is further

ORDERED that the action is dismissed.